FRANK L. HOLLIS, Administrator, C. T. A. of Estate
of LOLA LOWRY THOMAS, v. E. W. THOMAS, MRS.
ELBA CARNEY FRANCISCO, and MRS. LOLA F.
PELLETTIERI. —303 S. W. (2d) 751.

Western Section.   January 30, 1957.

Petition for Certiorari denied June 7, 1957.

Bailey, Ewing & Powell, Nashville, for appellants.

Peeler & Hollis, Camden, for Frank L. Hollis, Camden, Administrator, C. T. A.

Billy McElroy, Camden, for E. W. Thomas.

BEJACH, J. This cause involves an appeal by Mrs. Elba Carney Francisco and Mrs. Lola F. Pellettieri from a decree of the Chancery Court of Benton County, Tennessee, invalidating gifts of several bank accounts in Nashville, Tennessee, made by Mrs. Lola Lowry Thomas in her lifetme to Mrs. Elba Carney Francisco and rendering a decree against them for the amounts of same. The suit was brought by Frank L. Hollis, Administrator, C. T. A. of the estate of Mrs. Lola Lowry Thomas. The parties will be styled as in the lower court, complainant and defendants, or by their respectvie names.

The original bill in this cause was filed February 14, 1955 by complainant, Frank L. Hollis, as administrator with the will annexed of the estate of Mrs. Lola Lowry Thomas. The defendants were E. W. Thomas, Mrs. Elba Carney Francisco, and Mrs. Lola F. Pellettieri. E. W. Thomas is the brother-in-law of Mrs. Lola Lowry Thomas, deceased, having been the brother of her deceased husband, Dorsey B. Thomas. Mrs. Elba Carney

Francisco was the foster daughter of Mrs. Lola Lowry Thomas and of her husband Dorsey B. Thomas, having been reared in their home, although she was never formally adopted by them or either of them. Mrs. Lola F. Pellettieri is the daughter of Mrs. Francisco.

Complainant's bill alleges that on April 10, 1950, Dorsey B. Thomas, who was then sick with cancer, executed a will under the terms of which he bequeathed and devised to his wife, Lola Lowry Thomas, all property of every kind of which he died possessed, and that on the same day, Lola Lowry Thomas, his wife, in accordance with an agreement between them, executed a will under which said property, after setting up of a trust fund in the amount of $1,500 for the benefit of Wade Lowry, a brother of Mrs. Thomas, was bequeathed and devised to the defendants, E. W. Thomas and Elba Carney Francisco, each to receive one-half. The bill alleges that the property of said Dorsey B. Thomas thus bequeathed to his said wife consisted of cash, United States bonds, and certain lands in Decatur County, Tennessee, and in Benton County, Tennessee. The bill alleges that Mrs. Lola Lowry Thomas entered Vanderbilt Hospital in Nashville, Tennessee September 25, 1954 and remained there until October 7, 1954, when she went to the home of the defendant, Mrs. Elba Carney Francisco in Nashville, Tennessee, where she remained until October 10, 1954, at which time she reentered Vanderbilt Hospital where she remained until her death, October 22, 1954, at which time she was 79 years of age. Complainant's bill alleges that on September 25, 1954, the day Mrs. Thomas entered the hospital the first time, a bank account in the amount of $1,033.46 in the Nashville Trust Company, standing in the name of Mrs. Lola Lowry Thomas, was transferred

from her name to that of "Mrs. Lola L. Thomas or Mrs. Elba C. Francisco"; and that on October 27, 1954, following the death of Mrs. Thomas on October 22, 1954, said account was transferred by Mrs. Francisco to an account at said bank in the name of "Mrs. Elba C. Francisco or Mrs. Lola F. Pellettieri". The bill alleges further that Mrs. Lola Lowry Thomas had a checking account in the First American National Bank of Nashville, Tennessee, in the name of Mrs. D. B. Thomas, which on October 11, 1954 was changed from the name of "Mrs. D. B. Thomas" to "Mrs. D. B. Thomas or Mrs. E. C. Francisco"; that on October 22, 1954, the date of Mrs. Thomas' death, said account amounted to $2,622.99, and that on October 25, 1954, following the death of Mrs. Thomas, the said Mrs. Francisco withdrew $2,188.68 from said account and on November 15, 1954, withdrew the remaining $434.31 from said account. The bill alleges further that on October 11, 1954 Mrs. Lola Lowry Thomas had a savings account at the First American National Bank of Nashville, Tennessee, in the sum of $3,582.10 in the name of "Mrs. D. B. Thomas", and that on that date said account was changed from the name of "Mrs. D. B. Thomas" to that of "Mrs. D. B. Thomas or Mrs. E. C. Francisco," and that on October 25, 1954, following the death of Mrs. Thomas, said account was transferred to an account in the name of "Mrs. E. C. Francisco". Complainant's bill also alleges that at the time of Mrs. Thomas' death, she had a bedroom suite and certain other personal property at the home of defendant, Elba Carney Francisco; and that complainant had been unable to get possession of said furniture and some of the other personal property.

Complainant's bill also alleges "Mrs. Thomas was ill for several months prior to her death. During her illness she lived with the defendant, Mrs. Francisco, except when she was in the hospital, and Mrs. Francisco looked after her, nursed her, assisted her with her financial affairs, stood in the place of a child, and occupied a position of special trust and confidence. During this period of illness, she had a fear of becoming physically unable to look after herself and her business and to write checks in payment of bills. To escape these dangers she attempted to fix her bank account so that Mrs. Francisco, who occupied a confidential relationship to her, might see to it that she was taken care of and her bills paid. Mrs. Thomas had no intention of giving her money to Mrs. Francisco. She acted as she did so that Mrs. Francisco might conveniently withdraw from said account such funds as were necessary to pay her (Mrs. Thomas') expenses; and she intended that said money, after her death, be divided in accordance with her and her husband's wishes as expressed in her will." Complainant's bill also alleges that "The complainant states that Mrs. Thomas acted in said matters while under the influence, domination and control of and entirely dependent upon defendant, Elba Carney Francisco, and without independent advice and he further states that under the circumstances set out above, these actions of the defendant, Elba Carney Francisco, constituted an abuse of the fiduciary and confidential relationship existing between the parties and constituted undue influence and fraud."

Complainant's bill seeks a decree against Mrs. Francisco and Mrs. Pellettieri for the amounts of the three bank accounts described above which passed into their hands, respectively, and asked for a lien on the interest

of Mrs. Francisco in the lands devised to her by the will of Mrs. Thomas.

The answer of defendant, Mrs. Elba Carney Francisco, admits the execution of the wills of Dorsey B. Thomas and of Mrs. Lola Lowry Thomas, as is alleged in complainant's bill. Her answer admits the allegations of complainants' bill with reference to the bank account in the Nashville Trust Company in the amount of $1,033.46, but avers that same was set up by Mrs. Lola Lowry Thomas as a trust fund for her brother, Wade Lowry, and that same is being administered at this time in accordance with directions and wishes of Mrs. Thomas. Her answer admits a transfer of the checking and savings accounts in the First American National Bank of Nashville. Her answer denies that complainant has made any claim or demand for the furniture in her home, formerly belonging to Mrs. Thomas, and states that the complainant may have possession of said furniture at any time he desires it. The answer specifically and emphatically denies all allegations of the bill with reference to undue influence and fraud and demands and requires strict proof thereof. All allegations of the bill not specifically admitted or denied, are denied.

The answer of Mrs. Lola F. Pellettieri admits the transfer of the bank account in the Nashville Trust Company as is alleged in the bill, but avers that her only interest in this bank account is to carry out the terms of a trust established for the benefit of Wade Lowry, in the event that Mrs. Elba Carney Francisco is by death or disability unable to serve in the future; and avers that said trust is currently being administered by Mrs. Francisco in accord with the wishes of Mrs. Thomas, as same was established during the lifetime of Mrs. Thomas.

The answer of defendant, E. W. Thomas, admits all of the allegations and conclusions of complainant's bill, and in effect, joins in the prayers of same. This is natural, as defendant, E. W. Thomas, would be the principal beneficiary of complainant's successful prosecution of this suit.

The proof in this cause was taken by depositions, after which the cause was tried before the Chancellor; and on July 26, 1956, a decree was entered sustaining complainant's bill. Said decree, omitting the caption of same, is in the words and figures, as follows:

"Decree

"This cause came on to be heard by the Honorable Wayne A. Cox, Chancellor, on this the 25th day of May, 1956, upon the bill, the answer of the defendants, the proof filed in the cause by the parties, the exhibits and argument of counsel.

"Upon consideration of all of which the Court is of the opinion and finds as follows:

"1. That on April 10, 1950, D. B. Thomas, who was then sick, executed a will bequeathing to his wife Lola Lowery Thomas all of his property and that the said Lola Lowery Thomas, at the same time, executed a will in accordance with an agreement with her said husband bequeathing one-half of said property to the defendant E. W. Thomas and bequeathing one-half of said property to the defendant Elba C. Francisco after setting up a trust fund in the amount of Fifteen Hundred Dollars for Wade Lowery the brother of Lola Lowery Thomas and that the said Lola Lowery Thomas, after the death of D. B. Thomas, was

estopped from repudiating said agreement with her said husband.

"2. That a confidential relationship existed between the said Lola Lowery Thomas, deceased, and Mrs. Elba C. Francisco prior to the death of Mrs. Lola Lowery Thomas and at the time of doing of the things set forth in the original bill.

"3. That since said relationship of confidence and trust existed between Mrs. Lola Lowery Thomas and Mrs. Elba C. Francisco at the time of the transferring of the accounts as set forth in the bill, the burden was on Mrs. Elba C. Francisco to show that no undue influence was used, that no advantage whatever was taken by her of Mrs. Lola Lowery Thomas and that Mrs. Thomas had the benefit of competent and independent advice of a disinterested third party; and that the defendant Elba C. Francisco had wholly failed to show these things.

"4. That in September and October of 1954 Mrs. Lola Lowery Thomas was under the influence, dominion and control of the defendant Mrs. Elba C. Francisco and that she had no opportunity to receive the independent advice of a disinterested third party and did not receive the same before transferring said accounts.

"5. That the bill should in all things be sustained.

"It is therefore, Ordered, Adjudged and Decreed that the Complainant recover of the defendants Elba C. Francisco and Lola F. Pellettieri, the sum of One Thousand Thirty Three and 46/100, ($1,033.46) Dollars, the amount of the account in the Nashville Trust

Company, Nashville, Tennessee, which defendants transferred to an account in their names on October 27, 1954, less payments from said account made to one Wade Lowery by said defendants as shown by checks drawn on said account and payable to said Wade Lowery; provided said checks are filed in this cause within 15 days from the entry of this decree.

"It is further ordered, adjudged and decreed that complainant recover of the defendant Elba C. Francisco the sum of Two Thousand One Hundred Eighty Eight and 68/100 ($2,188.68) Dollars and the sum of Three Thousand Five Hundred Eighty Two and 10/100 ($3,582.10) Dollars, the amounts of accounts in the First American National Bank, Nashville, Tennessee, which said defendant Elba C. Francisco transferred to an account or accounts in her name on October 25, 1954, and the sum of Four Hundred Thirty Four and 31/100 ($434.31) Dollars, the amount of a withdrawal by defendant Elba C. Francisco on November 15, 1954 from said First American National Bank, with interest thereon from the date of the filing of the bill in this cause to the date of payment to the Complainant.

"It is further ordered, adjudged and decreed that the defendant Elba C. Francisco within fifteen days from the entry of this decree furnish the Complainant with a list showing the personal property belonging to Lola Lowery Thomas that has come into her possession and that she has not turned over to the Complainant.

"It is further ordered, adjudged and decreed that the Complainant is entitled to and the Court doth

decree a lien upon the interest of the defendant Elba C. Francisco in the land described in the bill to secure the payment of the judgments herein rendered.

"Upon statement of counsel representing the complainant made in open Court it was agreed that the defendant Elba C. Francisco be given credit for her claim in the amount of Two Hundred Ninety One and 85/100 ($291.85), Dollars, notwithstanding the fact that the said Elba C. Francisco in her answer states that she is not insisting upon her claim, provided she files within fifteen days from the entry of this decree written evidence of payment of the same out of the individual funds of the defendant Elba C. Francisco and not out of said joint accounts for and on behalf of Lola Lowery Thomas.

"The Court sustains objections to all questions asked witnesses which called for an answer in violation of Code Section 7980, and the Court also sustains objections to all questions asked witnesses which call for hearsay statements.

"On motion of Peeler & Hollis, Solicitors for Complainant, that the Court fix their fee for representing said complainant in this cause in this Court, the Court was of the opinion that a fee of Seven Hundred Fifty Dollars for their services in this Court would be fair and reasonable, and it is ordered, adjudged and decreed that said sum of $750.00 be paid to Peeler & Hollis as part of the cost of this cause.

"It is, further ordered, adjudged and decreed that the complainant pay all the cost of the cause.

"To the action of the Court in taxing the complainant with the cost the complainant excepts.

"To all of the foregoing the defendants, Mrs. Elba C. Francisco and Mrs. Lola F. Pellettieri, respectfully except and pray an appeal to the Court of Appeals for the Western Division of Tennessee, at the next term in Jackson, Tennessee.

"This appeal is granted by the Court and the said defendants are given thirty (30) days within which to perfect their appeal by giving bonds as provided by statute; which bonds shall be approved by the Circuit Court Clerk of Benton County, Tennessee.

"By agreement of counsel for the parties, it is agreed that the Clerk & Master shall send up to the Court of Appeals the original depositions and exhibits filed in the cause in lieu of transcribing the same."

From this decree defendants, Elba Carney Francisco and Lola F. Pellettieri, prayed, were granted, and have perfected their appeals to this Court. They have filed five assignments of error, which are as follows:

"Assignments of Error

"I

"The Chancellor erred in holding that Lola Lowry Thomas was estopped from repudiating an agreement with her husband in regard to the contents of her will. The Chancellor should have held that she was given her husband's entire estate by his will and no limitation was placed upon it and the said wills speak for themselves.

## "II

"The Chancellor erred in holding that a confidential relationship existed between Mrs. Francisco and Mrs. Thomas which automatically cast the burden upon the defendant Francisco of showing that no undue influence was used or that no advantage of Mrs. Thomas was taken. The Chancellor should have held that an exception to that broad rule exists in the case of parent and child, this being the instant case and he should have held that the complainant was required to prove undue influence was used or an advantage taken.

## "III

"The Chancellor erred in holding that Mrs. Thomas was under the dominion and control of the defendant Francisco. The Chancellor should have held that the burden of proving the same was upon the complainant who failed to prove this allegation.

## "IV

"The Chancellor erred in holding that the defendant Francisco owed the complainant anything. The Chancellor should have held that the defendant Francisco was lawfully entitled by a valid transaction of the deceased, Lola Lowry Thomas, made during her lifetime, to the proceeds of the two bank accounts at the First American National Bank and, that the defendant Francisco has no interest in the Bank account at the Nashville Trust Company other than the duty of performing a trust created during the lifetime of Mrs. Thomas.

## "V

"The Chancellor erred in holding that the defendant Francisco should pay interest to the complainant on the trust fund account. The Chancellor should have held that since the defendant Francisco claims no interest in the said trust fund account and so pled in her answer, that she was not liable for the payment of any interest on the said account and only liable to perform the trust created by Lola Lowry Thomas."

The proof in this cause shows that Mrs. Elba C. Francisco was taken into the home of Mr. and Mrs. Dorsey B. Thomas when she was nine years old, shortly after the death of the only child of Mr. and Mrs. Thomas, that she was brought up by them as if she were their own child and was married in their home when she reached the age of 21 years. The record shows that after her marriage Mrs. Francisco moved to Cullman, Alabama, where Mr. and Mrs. Thomas visited them frequently, as they also did later when Mrs. Francisco and her husband moved to Nashville, Tennessee; and that Mr. and Mrs. Thomas regarded Mrs. Francisco's children as their grandchildren, and the children of Mrs. Pellettieri as their great grandchildren. The defendant, Lola F. Pellettieri, was named for Mrs. Lola Lowry Thomas.

The proof in the record discloses that six months prior to the death of Mr. Thomas, he and Mrs. Thomas came to live in the home of Mrs. Francisco; that Mrs. Francisco nursed Mr. Thomas in her home, where he remained during his last illness until he left for the hospital where he died; and that Mrs. Thomas remained in the home of Mrs. Francisco until she went to the hospital where she

died, having lived in the Francisco home continuously for about four years.

The proof establishes that Mr. and Mrs. Thomas made wills on the same day, viz., April 10, 1950. Mr. Thomas had previously made a will leaving his property to Mrs. Thomas for and during her lifetime with remainder over to Mrs. Francisco and his brother E. W. Thomas, in equal shares, but that Mrs. Thomas was dissatisfied with this will because she did not wish Mr. E. W. Thomas and Mrs. Francisco to know in advance that they were to inherit the property at her death. Accordingly, in compliance with Mrs. Thomas' wishes in the matter, Mr. Thomas made a new will in which he left everything to Mrs. Thomas outright, and she in turn on the same day made a will, which with the exception of a trust fund of $1,500 set up for her brother, Wade Lowry, left everything to Mrs. Francisco and Mr. E. W. Thomas in equal shares.

The proof establishes that on April 17, 1953, being disturbed about the possibility of becoming incapable of attending to her own affairs or writing checks, Mrs. Thomas, on the advice of her attorney, who drafted same, executed a broad power of attorney giving Mrs. Francisco complete authority over all of the property and bank accounts of Mrs. Thomas. Although this instrument was duly recorded, Mrs. Francisco never made any use of the authority therein granted. On one occasion when Mrs. Francisco undertook to rent a lock box in the name of Mrs. Thomas or in the name of Mrs. Thomas and herself, she was told she could not do this without having Mrs. Thomas' signature for same; whereupon she rented the lock box in her own name. Later, however, when she had occasion to enter this box for the

purpose of removing certain bonds, she had Mrs. Thomas write a note to the bank authorizing her to remove said bonds, although she could have done this under the power of attorney without any additional authorization.

The record shows that the checking and savings accounts at the Nashville Trust Company and at the First American National Bank in the name of Mrs. Thomas were changed to joint survivorship accounts in the names of Mrs. Thomas and Mrs. Francisco by Mrs. Thomas' execution of signature cards for that purpose, she having been furnished signature cards for establishment of either joint survivorship accounts or joint accounts without right of survivorship, but that she had selected the joint survivorship account cards which were returned to the bank.

We think the learned Chancellor was in error when he ruled that because of the confidential relationship which existed between Mrs. Lola Lowry Thomas and the defendant, Mrs. Elba C. Francisco, the burden was on Mrs. Francisco to show that no undue influence was used, that no advantage was taken of Mrs. Thomas by Mrs. Francisco, and that Mrs. Thomas had had the benefit of competent and independent advice of a disinterested third party; and, consequently, that he was in error when he entered a decree in favor of complainant and against defendant, Elba Carney Francisco, because she had failed to show these things. Apparently the learned Chancellor was of opinion that the rule announced by the Supreme Court in the case of Turner v. Leathers, 191 Tenn. 292, 232 S. W. (2d) 269, controlled the facts of the instant case; and able counsel for complainant cites that case, together with the cases of Bayliss v. Williams, 46

Tenn. 440; Miller v. Proctor, 24 Tenn. App. 439, 145 S. W. (2d) 807; Sumpter v. Sandifer, 18 Tenn. App. 60, 72 S. W. (2d) 782; Roberts v. Chase, 25 Tenn. App. 636, 166 S. W. (2d) 641, and the opinion of this Court in the case of Farmer v. Rushing filed August 23, 1956, in support of the contention that, because of the confidential relationship between Mrs. Francisco and Mrs. Thomas, the burden was automatically on defendant, Mrs. Francisco, to show that no undue influence was used and no advantage taken of Mrs. Thomas.

In the case of Turner v. Leathers, there was involved a deed of conveyance made by an uncle to a nephew, which deed was set aside because a confidential and fiduciary relationship existed between the grantor and the grantee, and the grantee had had no independent advice in the connection with the execution of same. The opinion of the Supreme Court written by Prewitt, J., quotes with approval from Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 3, Sec. 956, page 792, as follows:

" 'Whenever two persons stand in such a relation that, while it continues, confiedence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, *although the transaction could not have been impeached if no confidential relation had existed.*' " Turner v. Leathers, 191 Tenn. 292, 298, 232 S. W. (2d) 269, 271.

The above language quoted from Pomeroy's Equity Jurisprudence is obviously applicable to the facts involved in the case of Turner v. Leathers; and, apparently, both the learned Chancellor and able counsel for complainant have interpreted it as being applicable to the facts of the case at bar. They ignore the fact, however, that the same textbook distinguishes the confidential relationship existing between parent and child from other types of confidential and fiduciary relationships. After discussing situations where the parent, rather than the child, is the dominant one, this textbook uses the following language which we quote:

"Where the positions of the two parties are reversed, where the parent is aged, infirm, or otherwise in a condition of dependence upon his own child, and the child occupies a corresponding relation of authority, conveyances conferring benefits upon the child may be set aside. Cases of this kind plainly turn on the exercise of actual undue influence, and not upon any presumption of invalidity; a gift from parent to child is certainly not presumed to be invalid." Pomeroy's Equity Jurisprudence, 5th Ed. Vol. 3, Sec. 962a, p. 850.

On the same subject Corpus Juris Secundum, says:

"Undue influence, to invalidate, a gift between parent and child, is an unlawful or fraudulent influence which destroys the free agency of the donor and substitutes therefor the will of the donee. However, influence gained by kindness and affection will not be regarded as undue if no imposition or fraud is practiced, even though it influences the parent or child to make an unequal and unjust disposition of his

property in favor of those who have contributed to his comfort and ministered to his wants, provided such disposition is voluntarily made." Vol. 67 C. J. S. Parent and child sec. 60, p. 768.

On the specific subject of deeds or conveyances, Am. Jur. says:

"Where there is no evidence that a parent was under the control and dominion of a child, the burden of proof to show that a conveyance by the parent to the child was fairly and understandingly entered into is not on the child. The burden is on one attacking the deed." 16 Am. Jur., Deeds, Section 374, p. 651.

In the recent case of Halle v. Summerfield, Tenn., 287 S. W. (2d) 57, 61, in which case this Court was reversed by the Supreme Court, this question is discussed at some length. This case dealt with a will contest; but, no doubt, the same degree of undue influence which would invalidate a will, would also invalidate a deed or transfer of personal property, and vice-versa. From the opinion of the Supreme Court in the case of Halle v. Summerfield, written by Mr. Chief Justice Neil, we quote as follows:

"What is undue influence in the sense of the law must be decided by the application of sound principles and good sense to the facts of each case. See Phillips' Pritchard on Wills, Section 128, for a full and complete discussion of this question. 'It is not influence that vitiates (a will), but *undue* influence; and it must go to the extent of depriving the testator of his free agency, and amount to moral coercion which he is unable to resist.' Peery v. Peery, 94

Tenn. 328, 29 S. W. 1, 3; Hammond v. Union Planters Nat. Bank, 189 Tenn. 93, 222 S. W. (2d) 377; Cude v. Culberson, 30 Tenn. App. 628, 209 S. W. (2d) 506.

"The determinative question, which is one of law, does the burden rest upon the proponent, Myron A. Halle, to show by the preponderance of all the evidence that the Revoking Will was free from the taint of undue influence, or does it rest upon these contestants to show that the will is invalid by reason of such influence as was reasonable calculated to deprive him of his free agency? This question was considered by the Court of Appeals for the Western Division in Solari v. Albertine, 29 Tenn. App. 61, 193 S. W. (2d) 111, wherein the testator and beneficiaries (grandchildren) occupied a confidential relationship. It was there held that mere proof of a confidential relationship 'does not raise the presumption that the beneficiary has exercised undue influence over the testator and cast upon her the burden of disproving undue influence', 29 Tenn. App. at page 75, 193 S. W. (2d) at page 117; that is in the absence of a showing of some activity on the part of the beneficiary in connection with the preparation or execution of the will. See annotations in 154 A. L. R. 584.

"The foregoing statement of the general rule is sustained by the weight of authority. See 154 A. L. R. 593, et seq. Among the many cases cited are the following: Powell v. Bechtel, 340 Ill. 330, 172 N. E. 765; In re Cookson's Estate, 325 Pa. 81, 188 A. 904; In re Wood's Estate, 131 Cal. App. 465, 21 P. (2d) 626; In re Mollan's Estate, 181 Minn. 217, 232 N. W. 1; In re Schillinger's Will, 258 N. Y. 186, 179 N. E.

380. In re Cookson's Estate, supra, it is held that, the mere fact that the proponent of a will is a daughter of the testator does not shift the burden of proof on the issue of undue influence.

"Considering 'interest and opportunity' of a beneficiary to influence the execution of a will, and casting a suspicion upon its validity the rule is well stated in 154 A. L. R. 593, and 66 A. L. R. 254, as follows:

" 'It is settled that the mere fact that one who benefits by a will had a motive and an opportunity to exert influence over the testator is not sufficient, of *itself, to create a presumption that the will was the product of undue influence.'* (Emphasis supplied.)

"In Koppal v. Soules, [189 Md. 346] 56 A. (2d) 48, the court held: 'The equitable doctrine of "confidential relations" to shift burden of proof (from contestant to the proponent) does not apply in case of a devise or bequest from parent to child.' In re Hannan's Estate, 315 Mich. 102, 23 N. W. (2d) 222, 232, it is held, ' "There must be proof of acts of domination." * * * "There can be no fatally undue influence without a person incapable of protecting himself, as well as a wrongdoer to be resisted." ' In Wilson v. Payton, 251 Ala. 411, 37 So. (2d) 499, 500, it is held: 'Appellant, proponent below, was a favored beneficiary. The testator was proponent's father and such a relationship is per se confidential. It is presumed prima facie that in transactions between parent and child the parent is the dominant party and that they are free from undue influence,

and in such cases the burden is upon contestant to show that time and circustances have reversed the order of nature, and that the dominance of the parent has been displaced by subservience to the child.' In re Logan's Estate, 1900, 195 Pa. 282, 45 A. 729, Supreme Court of Pennsylvania, is to the same effect; also Atkins v. Withers, 94 N. C. 581, 591. 'Evidence of affection as between persons related by blood or marriage does not show the existence of a confidential relationship.' Page on Wills, Vol. 2, Section 820, p. 623. 'The fact that the devisee under a will had been, for a long time, the partner of the testator does not raise a presumption of undue influence.' Page on Wills, Section 837, p. 649.

"We are not unmindful of many cases in this State holding that under certain circumstances the burden is upon the proponent to show that the will is the free and voluntary act of the testator, as when the testator was feeble in mind and body, or so mentally distraught from one cause or another he could not resist the importunities of the one seeking his favor. Thus in Burrow v. Lewis, 24 Tenn. App. 253, 142 S. W. (2d) 758, the court states generally circumstances under which the burden may shift from the contestant to the proponent, as where the testator was ninety (90) years of age, sick and upon his death bed; Cox v. Cox, 36 Tenn. 81, where the testator was blind and unable to read; Bartee v. Thompson, 67 Tenn. 508, where testator was blind and illiterate. In such circumstances more is required than proof of formal execution. To the same effect is Maxwell v. Hill, 89 Tenn. 584, 15 S. W.

253, the testator being 'illiterate' and made his mark to the will.

"But the law indulges no presumption of invalidity due solely to the advanced age of the testator, or that a child exercised his or her influence upon him to induce its execution. These cases have no application to the facts of this case. The testator, while well advanced in years, was intelligent and well advised. He understood the contents of these documents.

"The trial judge correctly charged the jury, and there is material evidence to support the verdict and judgment of the court.

"It results that the assignments of error are sustained, the Court of Appeals is reversed, and the Circuit Court is affirmed."

In the instant case there is no proof of actual undue influence or domination of Mrs. Thomas by Mrs. Francisco. On the contrary, the proof establishes that Mrs. Francisco did not attempt to advise Mrs. Thomas on matters of business, although she sometimes accompanied her to secure advice from others. The testimony of Mr. Thomas W. Carl, an officer of the First American National Bank, shows that Mrs. Francisco stayed back and away from them while Mrs. Thomas was conferring with him at the bank until Mrs. Thomas invited Mrs. Francisco to come into the conference and participate in the conversation. It follows, therefore, that unless the burden is on Mrs. Francisco to rebut a presumption of undue influence and to show affirmatively that Mrs. Thomas had independent and disinterested advice before changing her bank accounts to joint survivorship accounts, complainant's bill must fail. The situation is

further strengthened in behalf of Mrs. Francisco by the circumstance, clearly shown in this record, that Mrs. Francisco could have done, under the power of attorney issued by Mrs. Thomas to her, all that is being attacked in this cause on the ground that it was done by Mrs. Thomas as a result of undue influence on the part of Mrs. Francisco.

■ We will next take up the question of whether Mrs. Francisco, being only a foster child of Mrs. Thomas,— never having been legally adopted,—is entitled to the benefits of the above quoted law. We think that the relationship between both Mr. and Mrs. Thomas, on the one hand, and Mrs. Francisco on the other was that of parent and child; or, using technical language, we think that with reference to Mrs. Francisco they stood in loco parentis. Complainant's bill alleges, with reference to Mrs. Thomas, that "Mrs. Francisco looked after her, nursed her, assisted her with her financial affairs, stood in the place of a child, and occupied a position of special trust and confidence." On this subject we quote from Corpus Juris Secundum, as follows:

"The term 'in loco parentis' has been defined as in the place of a parent; instead of a parent; charged, factitiously, with a parent's rights, duties, and responsibilities; more specifically, the relationship which a person assumes toward a child not his own, holding the child out to the world as a member of his family toward whom he owes the discharge of parental duties. It has been said that the accepted definition of a person in loco parentis is one who means to put himself in the situation of a lawful parent to the child with respect to the office and duty of making provi-

sion for it; one assuming the parental character and discharging parental duties; a person standing in loco parentis to a child is one who has put himself in the situation of a lawful parent by assuming the obligations incident to the parental relation, without going through the formalities necessary to a legal adoption.'' 67, C. J. S. Parent and Child sec. 71, p. 803.

Elaborating further on this relationship, Corpus Juris Secundum says:

''Where one is in loco parentis the rights, duties, and liabilities of such person are the same as those of the lawful parent. The assumption of the relation is a question of intention, and not of chance, which may be shown by the acts and declarations of the persons alleged to stand in that relation. The status, once established, is presumed to continue, and one claiming discontinuance has the burden of proving it. Whether the relationship exists in any particular case will depend on all the facts and circumstances involved. * *

''Ordinarily, a person cannot stand in loco parentis to an adult who is mentally or physically incapacitated from providing for himself, and such relationship may not have its inception during the majority of the 'child'. On the other hand, where the relationship began during childhood and dependency, it may continue after the child becomes an adult and financially independent, and in the case of an adult lacking mental capacity to care for himself the relationship may have its inception while the person is an adult.'' 67, C. J. S. Parent and Child sec. 72, p. 804.

On the same subject, American Jurisprudence says:

"Where one stands in loco parentis to another, the rights and liabilities arising out of that relation are, as the words imply, substantially the same as between parent and child, although, of course, they may be enlarged or restricted by legislative enactment." 39 Am. Jur., Parent and Child, Sec. 61, p. 698.

In the case of Maguinay v. Saudek, the Supreme Court of Tennessee, speaking through McKinney, J., said:

"The husband is not, by law, bound to maintain a child of the wife by a fomer husband. But if he receives such child into his own house, he is then considered as standing in loco parentis, and is responsible for maintainance and education of the child so long, during its minority, as it lives with him; for by so doing he holds the child out to the whole world as part of his family. 2 Kent's Com. 192. This is precisely the obligation of a father as respects the support of his minor child; and the obligation and duty being the same, it would seem necessarily to follow that the corresponding right to the service and control of the child should be the same." Maguinay v. Saudek, 37 Tenn. 146, 147-148.

The case of Maguinay v. Saudek. which involved a suit for damages for seduction of a stepdaughter, and especially the language from same quoted above, has been cited with approval in a number of subsequent Tennessee cases; and, although it deals with the relationship of a stepfather and stepdaughter, we think it constitutes a general recognition of the relationship of one standing in loco parentis, and correctly states the law applicable

to the rights, duties, and responsibilities of one in that situation.

Applying the law as above stated to the facts of the case at bar, we think it is clear that the learned Chancellor was in error in ruling that such a confidential relationship existed between defendant, Mrs. Elba Carney Francisco, and the deceased, Mrs. Lola Lowry Thomas, as cast the burden of showing lack of undue influence on Mrs. Francisco, and of showing that Mrs. Thomas had had independent and disinterested advice, in order to validate the gifts of Mrs. Thomas' interest in the bank accounts here involved, and that the Chancellor erred in entering a decree against defendants Francisco and Pellettieri for the amounts transferred in said bank accounts. These questions are raised by appellants' assignments of error II, III, and IV; and these assignments of error we think must be sustained.

Appellants' assignment of error number I questions the ruling of the Chancellor that Mrs. Lola Lowry Thomas was estopped from repudiating an agreement with her husband, the late Dorsey B. Thomas, incident to the making of mutual wills on the same date. In our opinion, this ruling of the Chancellor is not material to the result reached, either by the decree of the Chancellor or by the holding of this Court. The validity of the will of Mrs. Lola Lowry Thomas executed under date of April 10, 1950 is not involved in this cause. Under its provisions one-half of all of the property owned by Mrs. Thomas at the time of her death goes to defendant, E. W. Thomas, and the other half goes to the defendant, Mrs. Elba Carney Francisco; but the bank accounts here involved, having been transferred by Mrs. Thomas during

her lifetime, do not constitute part of her estate, and consequently do not pass under the provisions of her will.

Appellants' assignment of error number V questions a ruling of the Chancellor which requires the defendant, Mrs. Francisco, to pay interest on that part of the recovery awarded in the lower court in favor of complainant in connection with the transfer of the bank account at the Nashville Trust Company. The basis of this objection is that that account was transferred for the purpose of establishing a trust fund in favor of the brother of Mrs. Thomas, which trust fund Mrs. Francisco claims she is disbursing for the benefit of Mrs. Thomas' brother and as she was authorized and directed to do. Her contention is, that even though she might be required to refund the amount of this trust fund or the proceeds of this particular bank account, it would be inequitable to require her to pay interest on same. In view of our ruling, invalidating the transfers of the several bank accounts, this question become immaterial, and it is therefore unnecessary for us to rule on same.

The net result is, that, with the sustaining of appellants' assignments of error II, III, and IV, complianant's bill in this cause must be dismissed. A decree to that effect may be entered in this Court. The costs of the appeal and those of the lower court will be adjudged against the complainant, Frank L. Hollis, as administrator with the will annexed of the estate of Mrs. Lola Lowry Thomas, and against his surety on the cost bond in the lower court.

Avery, P. J. (Western Section) and Carney, J., concur.