18715

Donnie GUNN, By and Through his Guardian ad Litem, Respondent, v. Floyd S. ROLLINGS, Appellant. Eddie Dale GUNN, By and Through his Guardian ad Litem, Respondent, v. Floyd S. ROLLINGS, Administrator of the Estate of Eufaula Rollings, Appellant.

(157 S. E. (2d) 590)

*Messrs. Hayes, Brunson & Gatlin,* of Rock Hill, *for Ap-pellant,*

*Messrs. Ridley, Simrill & McKinney,* of Rock Hill, *for Respondent,*

October 24, 1967.

Moss, Chief Justice.

These two actions were instituted in behalf of Donnie Gunn and Eddie Dale Gunn, minors, by a *guardian ad litem* to recover damages for personal injuries sustained while riding as passengers in an automobile operated by Eufaula Rollings.

It is alleged that the injuries to the said minors were the result of the negligent, careless, reckless and willful acts of Eufaula Rollings in the operation of an automobile on March 27, 1965, in York County, South Carolina. It appears that Rollings lost his life in the collision and these actions are against the administrator of his estate.

The answers of the administrator, in the third defense, alleged that although the decedent was not the natural or adoptive father of the two minors, decedent was the two minors' stepfather, and the two minors and decedent lived in the same household, voluntarily assumed the informal relationship of parent and children, and the decedent, therefore, stood *in loco parentis* to the two minors at the time of the accident. It is further alleged that because of the aforesaid *in loco parentis* relationship that the unemancipated minors could not maintain these actions against a person standing *in loco parentis.*

Plaintiffs filed demurrers to the third defense on the ground that the alleged relationship therein asserted would not be a bar to their actions. The lower court sustained

the demurrers of the plaintiffs and the defendant has appealed.

It is elementary that in passing upon a demurrer the court is limited to a consideration of the pleadings under attack, all of the factual allegations whereof that are properly pleaded are, for the purpose of such consideration, deemed admitted. *Outlaw v. Calhoun Life Ins. Co.,* 236 S. C. 272, 113 S. E. (2d) 817. The question for determination here is whether or not the relationship between an unemancipated minor and one who stood *in loco parentis* is a bar to an action by the minor against the personal representative of the person who stood *in loco parentis.*

It is the settled law of this state that an unemancipated child has no right of action against his parent for personal injuries caused by the parent's negligence, recklessness, willfulness and wantonness. *Kelly v. Kelly,* 158 S. C. 517, 155 S. E. 888; *Parker v. Parker,* 230 S. C. 28, 94 S. E. (2d) 12, 60 A. L. R. (2d) 1280; *Maxey v. Sauls,* 242 S. C. 247, 130 S. E. (2d) 570, and *Fowler v. Fowler,* 242 S. C. 252, 130 S. E. (2d) 568. In the last cited case we stated:

"The rule prohibiting suit by a minor against the parent for a personal tort is based upon considerations of public policy, which discourage causes of action that tend to undermine and destroy family unity and parental discipline. * * *"

Where one is *in loco parentis,* the rights, duties, and liabilities of such person are the same as those of a natural parent and such person is bound for the maintenance, care and education of the child so long as the relationship exists. The same rules of parental discipline apply to persons acting *in loco parentis.* 67 C. J. S. Parent and Child §§ 72 and 73, pages 804 and 805.

Generally speaking, an unemancipated child cannot maintain an action for damages for personal injuries against a stepparent who stands *in loco parentis* to the minor unless a right of action is authorized by statute. 67 C. J. S. Parent and Child § 61b(2), page 787. However,

suits of this kind have been sustained in several cases, but in all of them the cause of action appears to have been based upon some type of deliberate or malicious wrong or cruel or inhuman treatment, and, even in such a case some courts hold that the child cannot maintain the suit. 39 Am. Jur., Parent and Child, Section 90, page 736.

In *Trudell v. Leatherby,* 212 Cal. 678, 300 P. 7, an action against plaintiff's stepmother for negligence in the operation of an automobile, the court, in denying the right to maintain the same, stated that the reason for the negative rule was avoidance of disruption of the peace and harmony of the members of a household, and deciding that the relationship prohibited the action, the court said:

"As already seen, such actions tend to bring discord into the family and to disrupt the peace and harmony which should exist between the members of the same household. The same vexatious conditions created in the family circle by litigation between parent and child would result from like litigation instituted by a minor against the stepfather or stepmother when the minor has been taken into, and is a member of, the household of the latter. We can see no good reason why we should apply the rule in one case and deny its application in the other. If the reason for its application in one instance is sound, it must be equally so in the other, as the conditions brought about by the violation of this rule are the same in each instance."

The case of *London Guarantee & Accident Co. v. Smith,* 242 Minn. 211, 214, 64 N. W. (2d) 781, 785, was one that arose out of an automobile accident and the court after reviewing the facts and concluding that the *in loco parentis* relationship was present, said:

"Whatever may be said of the merits of the rule which bars a personal injury action in ordinary negligence by an unemancipated minor against his parent—and it has been criticized effectively by respectable authorities—; as long as it stands unchanged there is no justification for refusing to apply the rule to stepparents who genuinely stand *in loco*

*parentis* to the child of a spouse by a former marriage. It does indeed seem contrary to public policy to discourage a stepfather from voluntarily assuming the unselfish, *in loco parentis* position to a child in need of parental care. We therefore hold that the rule which bars an unemancipated minor from maintaining an ordinary negligence action against his parents for damages for personal injuries applies to a stepparent who stands *in loco parentis* to a minor child."

In *Bricault v. Deveau,* 21 Conn. Super. 486, 157 A. (2d) 604, a demurrer to the defense that the action was not maintainable was interposed, but was overruled by the court in these words:

"An unemancipated minor, therefore, cannot maintain an ordinary negligence action for damages for personal injuries against a step-parent who stands *in loco parentis* to the minor."

In the case of *Rutkowski v. Wasko,* 286 App. Div. 327, 143 N. Y. S. (2d) 1, it was held that a stepfather standing *in loco parentis* is immune from liability to stepchild for negligence.

In the case of *Bingler v. Hopper,* 336 Pa. 58, 7 A. (2d) 351, it was held that where a stepparent is a member of the same family as stepchild, the right of one to sue the other is controlled by the same principles as actions between natural parents and children. For other cases dealing with such relationships as stepparents, adoptive parents, or other persons standing *in loco parentis,* see the annotation in 19 A. L. R. (2d) 423.

The case of *Chestnut v. Chestnut,* 247 S. C. 332, 147 S. E. (2d) 269, was relied upon by the lower court. This case is not here controlling. In the cited case, at the time the action was brought for the support of a foster child, the *loco parentis* relationship had been previously terminated and, hence, there was no duty upon the foster parent to contribute to the further support of a foster child. Here, according to the pleadings, at the time of the injuries to the

two minor children, Rollings was in a *loco parentis* relationship to them. This was not true in the *Chestnut* case.

An unemancipated minor who does not have the right to sue his living parent for the parent's negligence has no right to maintain such an action against the parent's estate or administrator thereof if the parent dies, in the absence of a statute authorizing such action. *Cannon v. Cannon,* 287 N. Y. 425, 40 N. E. (2d) 236; *Lasecki v. Kabara,* 235 Wis. 645, 294 N. W. 33, 130 A. L. R. 883. See also in this connection the case of *Maxey v. Sauls,* 242 S. C. 247, 130 S. E. (2d) 570. In *Reingold v. Reingold,* 150 N. J. L. 532, 181 A. 153, it was held that the right of action, if any, is determined as of the day of the accident, it either did or did not exist as of that day. See also *Shea v. Pettee,* 19 Conn. Sup. 125, 110 A. (2d) 492.

It is our conclusion that the lower court was in error in sustaining the demurrer of the plaintiffs to the third defense in the answers of the defendant. It follows that the judgment of the lower court must be, and is hereby,

Reversed.

LEWIS, BUSSEY, BRAILSFORD and LITTLEJOHN, JJ., concur.