Arnold Ray MATHIS, Individually and as administrator of the Estate of Wanda J. Mathis,

v.

Earl O. AMMONS.

Civ. No. 3–78–48.

United States District Court, E. D. Tennessee, N. D.

May 31, 1978.

William A. Bomar, Oak Ridge, Tenn., for plaintiff.

McAfee Lee, Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

This diversity action was brought by the plaintiff, Arnold Ray Mathis, both individually and in his capacity as Administrator of the Estate of the decedent, Wanda J. Mathis, against the defendant, Earl O. Ammons. The complaint alleges that the decedent was killed while a passenger in an automobile that was negligently driven by the defendant. The plaintiff is the natural father of the decedent. The defendant is the decedent's uncle. Defendant has filed a motion to dismiss, which will be treated herein as a motion for summary judgment. A hearing on the motion has been held and briefs have been submitted.

■ The facts which are relevant to the determination of this motion are not disputed. The decedent was sixteen years old at the time of the accident and had been living with the defendant and his wife, along with her sister, for over fourteen years. While the plaintiff evidently did provide some support for the decedent until 1971, the defendant and his wife raised both the decedent and her sister on substantially their own resources. The plaintiff did not at any time visit the children. The plaintiff does not deny that the defendant treated the decedent as if she had been his own child, and would have continued to do so except for the automobile accident. Under these circumstances, the Court concludes that the defendant stood in loco parentis to the decedent. *Cf. Niewiadomski v. United States,* 159 F.2d 683, 686 (6th Cir. 1947).

■ Both parties agree that even in automobile negligence cases Tennessee still follows the majority rule that unemancipated minors may not recover against their natural parents in tort actions. *See e. g., Ownby v. Kleyhammer,* 194 Tenn. 109, 250 S.W.2d 37 (1952). The defendant argues that the same parental immunity should be available to one standing in loco parentis to a child.

Although the courts of Tennessee have not clearly resolved this question, there is some indication that Tennessee has approved the application of parental immunity to those standing in loco parentis. In *Campbell v. Gruttemeyer,* 222 Tenn. 133, 432 S.W.2d 894 (1968), the Tennessee Supreme Court held that an unemancipated minor child could not maintain an action in tort against the estate of his deceased natural parent. The Court cited in support of its decision, *Gunn v. Rollings,* 250 S.C. 302, 157 S.E.2d 590 (1967), a case which the Court acknowledged involved a deceased step-father. 432 S.W.2d at 900. This favorable citation is an indication of how the Court would have ruled had it been faced with the issue of the extension of immunity to one standing in loco parentis to a minor child.

The Court notes that the majority rule appears to be that in a mere negligence case, the same immunity is applied to a person standing in loco parentis as is applied to a natural parent. See 59 Am. Jur.2d Parent and Child, § 155, at 255; 41 A.L.R.3d 904, *Liability of Parent for Injury to Unemancipated Child Caused by Parent's Negligence,* § 11, at 960–963 (and cases cited therein). *See also, Hush v. Devilbiss,* 77 Mich.App. 639, 259 N.W.2d 170 (1977). This rule is grounded in sensible policy, for whatever the validity in general of the doctrine of parental immunity, see *infra,* there is no persuasive reason for distinguishing between a natural parent, and one who, like the defendant here, has unselfishly and devotedly served as a parent. *Cf. Wooden v. Hale,* 426 P.2d 679, 681 (Okl.1967). Even jurisdictions which have subsequently abrogated parental immunity had generally applied the immunity to one standing in loco parentis until the abrogation of parental immunity. *See e. g., London Guarantee & Accident Co. v. Smith,* 242 Minn. 211, 64 N.W.2d 781 (1954), and *Silesky v. Kelman,* 281 Minn. 431, 161 N.W.2d 631 (1968). Some jurisdictions have refused to apply

the doctrine of parental immunity to one allegedly standing in loco parentis to an injured child. However, such cases have often involved willful injury, *Brown v. Cole*, 198 Ark. 417, 129 S.W.2d 245 (1939), or doubt about the extent of parental responsibility of the defendant, *Burdick v. Nawrocki*, 21 Conn.Super. 272, 154 A.2d 242 (1959), *Xaphes v. Mossey*, 224 F.Supp. 578 (D.Vt.1963), or a challenge to the parental immunity doctrine generally, *Xaphes v. Mossey, supra*, and these circumstances may well have influenced the results in those cases.

The plaintiff argues that a person standing in loco parentis to an injured child should be granted parental immunity, if at all, only if support is a legally enforceable obligation. *Cf. Rayburn v. Moore*, 241 So.2d 675 (Miss.1975). The Court notes that under Tennessee law, it may well be that parental obligations are enforceable against one standing in loco parentis. *See Hollis v. Thomas*, 42 Tenn.App. 407, 303 S.W.2d 751 (1957), in which the court approved the following language:

"Where one is in loco parentis, the rights, duties, and liabilities of such person are the same as those of the lawful parent." *Id.* 303 S.W.2d at 761 (citing 67 C.J.S. Parent and Child § 71, at 803).

However, even in the absence of such a legal obligation the Court is of the opinion that the mechanical application of the rule urged by the plaintiff might have the effect of discouraging the type of voluntary and unselfish act of caring for a child in need of parental support and guidance that the defendant undertook in this case.

The plaintiff next argues that notwithstanding any availability of parental immunity to the defendant, that the availability of insurance in this case operates as a waiver of immunity by the defendant, at least to the extent of the insurance coverage. In response, the defendant maintains that *Prince v. Prince*, 205 Tenn. 451, 326 S.W.2d 908 (1959) precludes such a holding by this Court.

Defendant's reliance upon *Prince* is misplaced. *Prince* held that the procurement of liability insurance does not permit a wife to maintain a suit in tort against her husband to the extent of the insurance coverage. The rationale for the decision was the "common-law doctrine of the unity of husband and wife." *Id.* 326 S.W.2d at 910. The procuring of liability insurance would not be held to waive immunity between husband and wife because "there was no immunity to waive." *Id.* In contrast, there has never been any notion of unity between parent and child. For this reason, the Supreme Court has refused to apply the reasoning of the *Prince* case in a case involving parental immunity. *Logan v. Reaves*, 209 Tenn. 631, 354 S.W.2d 789, 791–92 (1962). Accordingly, the decision in *Prince* with respect to the effect of liability insurance is not applicable to the case *sub judice*.

However, based upon other evidence, the Court is of the opinion that the rule in Tennessee is that liability insurance does not serve as a waiver of parental immunity. In *Campbell v. Gruttemeyer, supra*, the Tennessee Supreme Court decided that parental immunity applies when a child is suing the estate of the parent. In the course of that opinion, the Court "adopt[ed] as sound a statement in *Lasecki v. Kabara*, 235 Wis. 645, 294 N.W. 33, 130 A.L.R. 883 (1940)." *Lasecki* involved a suit against a deceased parent who had been insured. The quoted statement from *Lasecki* contained the following language:

" 'The (defendant) Insurance Company contends that the demurrers to the causes of action asserted against it by the six injured children, based upon the alleged causal negligence of their father, should have been sustained on the authority of *Wick v. Wick*, 192 Wis. 260, 212 N.W. 787 . . . . [citations omitted]. It was held in those cases that an unemancipated minor may not recover from his parent for the latter's negligence. The rule stated in *Wick v. Wick, supra*, has been assailed at times by members of the bar who represented unemancipated minors, seeking to recover for their parent's alleged negligence in cases where the parent was insured.

\*     \*     \*     \*     \*     \*

"'Practically all of the courts of this country hold that the fact that the parent is insured, does not give rise to a cause of action based on the parent's negligence when no cause of action exists against the parent if not insured.'" 432 S.W.2d at 897–98.

After this quotation, the Tennessee Supreme Court went on to state:

"Appreciating that there are some considerations in favor of allowing such an action, we are of the opinion those against allowing it are weightier. That where by reason of a long established rule of the common law, generally recognized and acceded to, there is no cause of action, this Court should not, simply in quest of that which a very few may regard as modern and enlightening, create one." 432 S.W.2d at 899.

While the Court may perhaps not have meant that between parent and child there is literally no cause of action, see *Logan v. Reaves, supra,* 354 S.W.2d at 792, the Court clearly did intend to bring Tennessee within the rule established in *Lasecki.* That rule, as the quoted language indicates, not only established that a parent's estate was immune from suit, but also that liability insurance did not render liable an otherwise immune parent. Indeed, the reasoning in *Lasecki* treated the two questions as so closely related, that *Lasecki* itself has become known primarily as a case treating the question of the effect of insurance upon parental immunity. *See Goller v. White,* 20 Wis.2d 402, 122 N.W.2d 193, 197 (1963); *McNeal v. Administrator of Estate of McNeal,* 254 So.2d 521, 523–24 (Miss.1971). Because the Tennessee Supreme Court relied extensively upon *Lasecki,* including references to the insurance issue, the Court regards *Campbell v. Gruttemeyer* as suggesting that under Tennessee law, liability insurance does not serve as a waiver of parental immunity.

*Lasecki* was expressly restricted, if not entirely overruled, in *Goller v. White, supra.* However, *Goller* was decided in 1963, while *Campbell v. Gruttemeyer* was not decided until 1968, five years later. Accordingly, the weakening of *Lasecki* as precedent in Wisconsin cannot be considered as reducing its significance in Tennessee. Indeed the reasoning of *Lasecki* has been considered persuasive at least as late as 1971, eight years after *Goller.* *See McNeal v. Administrator of Estate of McNeal, supra.*

Despite recent criticism, *see Sorensen v. Sorensen,* 369 Mass. 350, 339 N.E.2d 907 (1975), a majority of jurisdictions appear still to adhere to the rule that the existence of liability insurance is not sufficient by itself to abrogate parental immunity otherwise applicable. See 59 Am.Jur.2d, Parent and Child, § 156, at 255. The Court is of the view that sound policy supports this position. The purpose of the doctrine of parental immunity is to protect the family relationship. *Logan v. Reaves, supra,* 354 S.W.2d at 791. It has been argued from the point of view of family peace, the existence of liability insurance removes the necessity of parental immunity because insurance preserves domestic tranquility by safeguarding family finances from a judgment of liability in a suit. *See e. g., France v. A.P.A. Transport Corp.,* 56 N.J. 500, 267 A.2d 490 (1970). However, this position overlooks other possible effects of a tort action within the family. The existence of liability insurance does not remove the obligation of the parent to cooperate with the insurer, an obligation which will often place a parent who is seeking honestly to cooperate, and his child, in adversary roles. *Cf. Parks v. Parks,* 390 Pa. 287, 135 A.2d 65 (1957). Assuming, for example, that there are differing versions of the facts of an accident, the public display of disagreement and accusation can only weaken the bond between parent and child. In such a situation, the parent's obligation to the insurer cannot be "faithfully complied with without disturbing the family relationship which the policy of the law seeks to preserve. . . ." *Id.* 135 A.2d at 73. The parent may find himself forced to choose between his child's interests and his obligations to the courts. For this reason, "The existence of liability insurance does not remove the inherent danger of the destruction of the parent-child relationship" inherent in the setting of

a tort action. *Stevens v. Murphy*, 69 Wash.2d 939, 421 P.2d 668, 674 (1968). The fact that similar family tensions may arise in contract and property actions, *cf. Lee v. Comer*, 224 S.E.2d 721, 723 (W.Va.1976), does not strike the Court as a particularly compelling reason for expanding the potential for family conflict by abrogating the doctrine of parental immunity in tort. The Court notes that contract and property claims arise less frequently among unemancipated minors than do potential tort claims.

Plaintiff argues that waiver of parental immunity in this instance is supported by the Tennessee rule that municipal insurance operates as a limited waiver of municipal liability. *See e. g., City of Kingsport v. Lane*, 35 Tenn.App. 183, 243 S.W.2d 289, 291–92 (1951). However, this waiver rule is predicated on the assumption that the procurement of insurance is literally intended by the municipality to be available in tort actions; otherwise, the insurance would "be an entirely useless gesture and waste of public funds." *Williams v. Town of Morristown*, 32 Tenn.App. 274, 222 S.W.2d 607, 614 (1949). Of course, the insurance policy in the case *sub judice* cannot be said to have been actually intended by the defendant as a waiver of his parental immunity. Furthermore, protection of the public purse, which is the sole purpose of municipal immunity, see *Reed v. Rhea County*, 189 Tenn. 247, 225 S.W.2d 49 (1949), is satisfactorily accomplished by waiver of immunity to the extent of the insurance policy coverage. As explained above, there are other concerns served by the parental immunity doctrine, which are not satisfied by the existence of liability insurance.

It has not been argued, as indeed it could not, that the death of the child in this case weakens the rationale of the doctrine of parental immunity. Tenn.Code Ann. § 20–607 makes it clear that the validity of this action must be decided as if the death of the child had not ensued. *Cf. Maxey v. Sauls*, 242 S.C. 247, 130 S.E.2d 570, 572 (1963).

For the foregoing reasons, it is hereby ORDERED that the defendant's motion to dismiss be, and the same hereby is, granted.

Order Accordingly.