SEGALL and others, Appellants, vs. OHIO CASUALTY COMPANY, imp., Respondent.

*January 15—April 7, 1937.*

*Joseph A. Padway* of Milwaukee, for the appellants.

For the respondent there was a brief by *Bitker, Tierney & Puchner* of Milwaukee, and oral argument by *Joseph E. Tierney.*

FAIRCHILD, J. It is plaintiffs' first contention that by the terms of secs. 204.33 (2) and 204.34 (2), Stats., they are entitled to recover upon the policy issued by the defendant to Charles Segall regardless of the rule recognized in *Wick v. Wick,* 192 Wis. 260, 212 N. W. 787, that a child may not recover from a parent for personal injuries caused by

the parent's negligence.  The statutory provision identical in each subsection is as follows :

"No policy of insurance [or] agreement of indemnity . . . shall exclude from the coverage afforded or the provisions as to the benefits therein provided persons related by blood or marriage to the assured."

Plaintiffs contend that the prohibition against exclusion from the benefits of a policy of persons related to the assured evidences a legislative intent to expand this type of policy beyond that of mere liability or indemnity and to make it in this situation, at least to a limited degree, an accident policy. Thus, if this position be sound, the fact that a child is precluded from recovering damages against its parent for negligence because of relationship cannot be relied upon as a defense upon the policy because expressly made immaterial by the above provision.  The words of the statute are not susceptible of the broad interpretation given to them by the plaintiffs, and it is clear that the contract of insurance is in terms an indemnity or liability policy predicated upon the assumption that either the assured or such person as may be covered by an omnibus clause has sustained a liability to the person seeking to recover for injuries.  Since there is no question concerning the scope of the policy, it is not necessary to labor this point.  The only question is whether the statute has amplified the policy.  On this point, we think the plaintiffs' contentions to be without merit.  The differences between liability or indemnity insurance and mere accident insurance are fundamental and marked.  This distinction existed in the insurance world long before statutes assumed to regulate the subject of liability insurance.  An examination into the history of our statutes dealing with liability insurance compels the conclusion that however much the contract has been modified or the liability broadened, the statutes have consistently dealt with such contracts as liability policies,

and there is no point in that history at which there can be said to have been a departure from this general statutory attitude. The difference being so marked between liability and indemnity insurance on the one hand and various types of accident insurance on the other, one would normally expect a transition from one form to the other by statutory mandate to be clothed with unmistakable language. A brief review of the statutory history indicates no such legislative purpose. The first statutory regulation of any importance followed the case of *Glatz v. General Acc., F. & L. Assur. Corp.* 175 Wis. 42, 183 N. W. 683. In that case plaintiff had judgment against the tort-feasor, but before the judgment could be perfected, assured had been adjudicated a bankrupt. The policy contained a no-action clause which conditioned the liability of the insurance company upon actual loss by the insured arising out of payment of a judgment in money. Plaintiff sought by garnishment in aid of execution to recover the amount of the judgment from the insurer, and it was held in this court that, the policy being one of liability against actual loss, the insurer sustained no obligation to the tort-feasor until the latter had discharged the judgment. To prevent a recurrence of this situation, secs. 204.30 and 85.25, Stats. 1925, were enacted. In substance, liability insurance policies were required to contain, (1) a clause to the effect that the insolvency or bankruptcy of the assured would not release the insurer from liability; (2) an omnibus coverage clause to the effect that every policy shall contain provisions extending the coverage applicable to the named assured to any person riding in or operating the automobile of the assured described in the policy with the consent of the latter; (3) provisions to the effect that the insurer shall be liable to the persons entitled to a recovery of damages arising out of the negligent operation of the described vehicle. All of these statutory enactments indicate a purpose to eliminate certain types of defenses theretofore available to the insurance company and in effect to create a direct liability by permitting the

insurance company to be made a party defendant. As in all new statutory provisions, some questions were raised concerning the precise effect of these statutes, and various amendments further to evidence the legislative intent were enacted. Thus, in 1929, the legislature amended sec. 85.25 and renumbered it sec. 85.93. Chs. 454, 467, Laws of 1929. It read:

"Any bond or policy of insurance covering liability to others by reason of the operation of a motor vehicle shall be deemed and construed to contain the following conditions: That the insurer shall be liable to the persons entitled to recover for the death of any person, or for injury to person or property, *irrespective of whether such liability be in praesenti or contingent and to become fixed or certain by final judgment against the insured,* when caused by the negligent operation, maintenance, use or defective construction of the vehicle described therein, such liability not to exceed the amount named in said bond or policy."

This amendment was for the purpose of putting to rest a previous question whether there was any distinction under the statutes between liability and indemnity policies. In all of these statutory provisions it will be noticed that nothing was done that in any way sought to change the character of this insurance. All of the provisions had for their purpose making the insurance available conveniently to one who had a tort claim against the assured, but all the changes proceed upon the assumption that such a claim is essential to the operation of the policy. It appears to us that this conclusion survives the subsequent statutory changes as well. For example, it had been held that insurers were not proper parties defendant to an action by an injured party where the contract provided that no action should be brought against the insurer prior to a determination of the liability of the assured. *Morgan v. Hunt,* 196 Wis. 298, 220 N. W. 224. After the amendment in 1929 of sec. 85.25, it was found that the insurer might still limit the amount of its liability and prescribe the conditions upon which its liability should arise.

*Bergstein v. Popkin,* 202 Wis. 625, 233 N. W. 572. In 1931, the legislature amended sec. 260.11 (1) and added sec. 260.11 (2), in order to meet the situation pointed out by the two cases last cited, and this amendment was held in *Lang v. Baumann,* 213 Wis. 258, 251 N. W. 461, to have changed the doctrine of the *Bergstein* and *Morgan Cases* and to provide that the insurer might be joined even where there was a no-action clause. It will be seen that up to and including 1931, the year in which the last-named change took place, the assumption on which all of the statutes have gone is, (1) that assured has sustained a liability, and (2) that he has a liability or indemnity policy payable only if this liability is established. This was the assumption and holding of several cases up to 1931. In *Fanslau v. Federal Mutual A. Ins. Co.* 194 Wis. 8, 215 N. W. 589, the contract by its terms excepted from indemnity liability on account of damages suffered by a person riding in the automobile described. It was held that sec. 85.93 merely gave to those who had a cause of action against the insured which was included within the contract of insurance a cause of action against the insurer, and that it did not restrict possible exclusions from coverage. In *Drewek v. Milwaukee Automobile Ins. Co.* 207 Wis. 445, 240 N. W. 881, the insurance contract was to pay loss occurring while the automobile was being operated for commercial purposes in the business of the assured. The statutes conferred no right of action upon one injured while the car was not being so used, even though it was used with the permission of the named assured. In other words, the contract insured neither the named nor the additional assureds against liability when using the automobile for other than specified purposes. In the case of *Bernard v. Wisconsin Automobile Ins. Co.* 210 Wis. 133, 135, 245 N. W. 200, the insurer specified in its contract that it should not be liable for injuries sustained by "any person to whom the assured may be liable because of the obligations . . . of any workmen's compensa-

tion . . . law." Bernard, an employee of assured, injured while riding in assured's car, could not recover from the insurer, sec. 204.30 (3) not being controlling. In *Wiechmann v. Huber,* 211 Wis. 333, 336, 248 N. W. 112, the assured died before action was begun by the representative of the deceased party, and the action for wrongful death abated thereby. It was held to be—

"quite impossible to read into the statutes an intent to create a liability on the part of the insurance carrier completely dissociated from the liability of the insured,"—

and plaintiff could not recover from the insurer. *Cullen v. Travelers Ins. Co.* 214 Wis. 467, 253 N. W. 382, concerned a policy which excluded damages arising from the operation of the automobile while being driven by any person under sixteen years. Accordingly, the assured could not recover on the policy for loss resulting from the negligence of his son, less than sixteen, who drove with assured's permission.

With this statutory background, ch. 477, Laws of 1931, was enacted, originally numbered sec. 204.33 and renumbered sec. 204.34, providing in part as follows:

"(1) No policy of insurance, agreement of indemnity or bond covering liability or loss arising by reason of the ownership, maintenance or use of a motor vehicle issued in this state shall exclude from the coverage afforded or provisions as to benefits therein any of the following:

"(a) Persons while driving or manipulating a motor vehicle, who shall be of an age authorized by law so to do;

"(b) The operation, manipulation or use of such motor vehicle for unlawful purposes;

"(c) The operation, manipulation or use of such motor vehicle while the driver is under the influence of intoxicating liquors or narcotics; while such motor vehicle is engaged in the transportation of liquor in violation of law, or while such motor vehicle is operated in a reckless manner.

"(2) No policy of insurance, agreement of indemnity or bond referred to in subsection (1) shall exclude from the coverage afforded or the provisions as to the benefits therein

provided persons related by blood or marriage to the assured."

A similar, and in some respects identical, section was created as sec. 204.33 by ch. 393, Laws of 1931.

While the legislative history of this subject shows that the legislature intended to make the remedy of the injured person upon the policy more convenient and to permit action directly against the insurer, and to destroy defenses of bankruptcy and to preclude the insurer from withholding payment until the assured has actually discharged the judgment, it has never departed from the policy of treating these policies as liability insurance. This being true, it should require rather clear and unmistakable language to lead to the conclusion that the legislature intended such departure in enacting sec. 204.33 (2) or sec. 204.34 (2). An examination of the provisions of this section satisfies us that "the coverage afforded and the provisions for benefits therein" relate to persons driving the car, *i. e.,* either the named assured or those affected by the omnibus clause. Thus, in sub. (1) (a), if a person who is driving the car while under age has an accident sustained through his negligence, he may not be deprived of the right to claim coverage; under sub. (1) (b), in case of the operation or use of the car for unlawful purposes, the driver may still claim to be protected; sub. (1) (c) applies to the driving of the car when the driver is under the influence of liquor, or where the motor vehicle is operated in a reckless manner. Sub. (2), which is the subsection here involved, precludes the insurer from excluding from the coverage or benefits, persons driving the car who are related by blood or marriage to the assured. While all of these provisions are of indirect benefit to the injured person in the sense that by keeping the policy in force they render the insurance company liable to the injured person, they plainly refer to the coverage of the driver of the car. Thus, sub. (2) would preclude an insurance company from making available by the terms of the

policy a defense upon the ground that the car was at the time being driven by the wife, son, or other relative of the named assured. It means nothing more than that, and the isolation of the word "benefits" from its context cannot be recognized as a sound method of construction. Secs. 204.33 and 204.34 are so similar in wording and purpose that the construction applicable to one may suffice for the other. It will be noticed that subs. (1) and (2) of sec. 204.34 contain the identical formula: ". . . No policy of insurance . . . shall exclude from the coverage afforded or the provisions as to the benefits therein. . . ." Under sub. (1) this phrase can only relate to the drivers who operate while under age, for unlawful purposes, while intoxicated, etc. There is no reason to suppose that it means anything different in sub. (2).

The plaintiffs also insist that the doctrine of *Wick v. Wick, supra,* is not of common-law origin, but is a judicial pronouncement based upon a fallacious social concept, and that that case should be overruled. The law applied in that case was that a child, fourteen years of age, could not maintain an action in tort against its parent for personal injury resulting from the negligence of the father, while riding with him in his automobile. The decision there made and the statement that—

"we find ourselves thoroughly in accord with courts holding that an action of this kind cannot be maintained and indorse the doctrine as one founded in a most wise and wholesome public policy"—

was not intended to and does not rule out every action by a child against its parent. While experience of mankind may furnish assurance that family peace and welfare of the child may in the main be left to the solicitude of the father and mother for the health and happiness of their child, and to the loyalty and obedience of the child, there are instances to which the law as recognized in *Wick v. Wick* will not apply. Certain facts and circumstances may give rise to a cause of

action between parties who also bear the relation to each other of parent and child. The case before us is not in that category. The habit of the people of cherishing the family unit as an institution and of submitting to the authority of the parent over the children in matters of discipline, training, and development to the extent of not resorting to civil suits for damages caused by negligence of a parent in his care of his children is recognized. The court in applying the law to the facts in *Wick v. Wick* were concerned with a case where the father, acting within the parental relationship, had inadvertently or negligently injured his child. In the case before us, there is no suggestion that any other than the parental relation existed between plaintiffs and their father or that the injury complained of was incidental to such other relationship.

*By the Court.*—Order affirmed, and cause remanded for further proceedings according to law.