Leona Campbell, James C. Campbell, Rachel Maxine Campbell and Deborah Iona Campbell, b/n/f Frank B. Dodson, (four separate cases), Petitioners,

*v.*

Joan C. Gruttemeyer, Administratrix of the Estate of Maurice Edward Campbell, Deceased, Respondent.

432 S.W.2d 894

(*Knoxville,* September Term, 1968.)

Opinion filed October 11, 1968.

William T. Gamble, Kingsport, Wilson, Worley & Gamble, Kingsport, of counsel, and J. D. Lee, Knoxville, Lee, McGee & Garrett, Knoxville of counsel, for petitioners.

James A. Weller, Johnson City, Epps, Powell, Weller, Taylor & Miller, Johnson City, of counsel, for respondent.

134

Mr. Justice Humphreys delivered the opinion of the Court.

This case was brought to this Court by certiorari to the Court of Appeals in order that we might examine the question, whether a cause of action can be maintained by an unemancipated minor child against the estate of a deceased parent for personal injuries allegedly occurring in the negligent operation of an automobile in the course of a family relationship. The trial judge held that such an action could be maintained. On appeal, the Western Division of the Court of Appeals, in an opinion by Bejach, Judge, reversed, holding that an unemancipated child has no such cause of action.

There were certain other questions considered by that Court in its opinion. But our only comment on these, since they are by no means novel, is that we concur in their disposition by the Court of Appeals, and affirm its judgment in regard thereto.

After the fullest consideration, we have concluded the Court of Appeals has correctly decided the case, and

finding the part of its opinion on the question under consideration to be both adequate and lawful, we adopt that part of the opinion, as follows:

"We have before us appeals in error by Roadway Express, Inc. and by Joan C. Gruttemeyer, Administratrix of the estate of Maurice Edward Campbell, deceased, from judgments against both of them entered on jury verdicts against them in the Circuit Court of Greene County, Tennessee, and by Roadway Express, Inc. from a judgment against it in favor of James Fletcher, Administrator of the estate of Maxine Cash Campbell. The judgment in favor of the estate of Maxine Cash Campbell is in the amount of $100,000, and those in favor of Leona Campbell are in the amount of $75,000, those in favor of Rachel Maxine Campbell are in the amount of $15,000, those in favor of Deborah Campbell are in the amount of $15,000, and those in favor of James Maurice Campbell are in the amount of $5,000. Suit was also brought by the Estate of Maxine Cash Campbell against the Estate of Maurice Edward Campbell, but a demurrer to the declaration in that action was sustained and no appeal was taken from that ruling. In this opinion the parties will be referred to as plaintiff or plaintiffs, as the case may be, and as defendant and defendants, or called by their respective names, the defendant Roadway Express, Inc., being designated as Roadway, and John W. Fletcher, Administrator, as the estate of Mrs. Campbell.

"The judgments referred to were recovered as the result of a collision which occurred August 8, 1964 between a Falcon automobile owned and driven by Maurice Edward Campbell and a tractor-trailer combination owned by Roadway Express, Inc., driven by one of its employees, Thomas Page. This collision occurred at about

3:15 A.M. on U.S. Highway 11E, just outside of the town of Tusculum. Mr. and Mrs. Campbell were killed and four of their children, James Maurice, age 17; Deborah, age 9, Rachel, age 8; and Leona, age 5, were injured. The Campbell family had left their home in Amherst, Virginia in the late afternoon of August 7, 1964 for a weekend outing in the Great Smoky Mountains. They were accompanied by Mr. and Mrs. Phillipi, who were riding in another car with another son of Mr. and Mrs. Campbell and a visitor of the Phillipi family. The Phillipi car had passed Roadway's tractor-trailer when the Campbell car, which was traveling west on Highway 11E, crossed over onto the wrong side of the highway and collided head-on with the Roadway tractor-trailer which was headed east. The four injured children and Mrs. Campbell's Estate brought suits against both Roadway Express, Inc. and the estate of Maurice Edward Campbell, which suits resulted in the verdicts and judgments referred to above.''

\* \* \* \* \* \*

''We must next take up the assignments of error filed by plaintiff in error Joan C. Gruttemeyer, administratrix of the estate of Maurice Edward Campbell. In her capacity as administratrix, Mrs. Gruttemeyer has filed three assignments of error.

''By Assignment of Error I, it is contended for the Estate of Maurice Edward Campbell that the trial court erred in overruling and denying the deceased parent's pleas and motions for directed verdicts on the ground that a cause of action by an unemancipated minor child cannot be maintained against the estate of a deceased parent for personal injuries allegedly occurring in the

negligent operation of an automobile in the course of a family relationship.

■■■■ "Tennessee courts have consistently followed the rule that an unemancipated minor child cannot sue its parent for personal injuries. See *McKelvey v. McKelvey,* 111 Tenn. 388 [77 S.W. 664], 64 L.R.A. 991; *Turner v. Carter* (1936), 169 Tenn. 553 [89 S.W.2d 751]; *Graham v. Miller* (1945) 182 Tenn. 434 [187 S.W.2d 622], 162 A.L.R. 571; *Mahaffey v. Mahaffey* (1932), 15 Tenn.App. 570; *Owenby v. Cleyhammer* [Kleyhammer] (1951), 194 Tenn. 109 [250 S.W.2d 37]. Counsel for the minor children in the instant cases undertake to distinguish the facts of these cases on the ground that they are here brought not against a living parent but against the estate of a deceased parent. This presents a case of first impression in Tennessee. Counsel for the minor appellees, in support of this distinction, rely on the case of *Logan v. Reaves* (1961); 209 Tenn. 631, 354 S.W.2d 729 [789]. In that case, the Supreme Court held that an action for wrongful death of a parent, caused by negligent operation of an automobile by her minor child, could be maintained against the child after the child had been emancipated by marriage and also by court decree. Our Supreme Court held that the reason for the family unity rule providing immunity from suit was the public policy of protecting the family relationship, and when the reason ceases, the rule ceases. In the Logan case, the defendant, who was the daughter of the deceased for whose estate the recovery was allowed, had, after the fatal accident, married, and had also had her disabilities of minority removed by a court decree. Holding to the contrary, counsel for Joan C. Gruttemeyer, Administratrix, cite and rely on *Turner v. Carter,* 169 Tenn. 553, 89 S.W.2d 751, in which case the

Supreme Court denied a recovery against a son who had not been completely emancipated. In that case, the Supreme Court speaking through Mr. Justice DeHaven, said:

'We do not have in our reports any case where a parent sued a minor child for damages based upon negligence. However, we think the principle which controls a disposition of this question is to be found in *McKelvey v. McKelvey,* 111 Tenn. 388, 77 S.W. 664, 64 L.R.A. 991, 102 Am.St.Rep. 787, 1 Ann.Cas. 130, where the question under consideration was whether a minor child had a court remedy against his father for personal injuries.

In denying a remedy in such case, the court quoted with approval from the case of *Hewlett v. George,* 68 Miss. 703, 9 So. 885, 13 L.R.A. 682, as follows:

'So long as the parent is under obligation to care for, guide, and control, and the child is under reciprocal obligation to aid and comfort and obey, no such action as this can be maintained. The peace of society, and of the families composing society, and of a sound public policy designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent.' *Turner v. Carter,* 169 Tenn. 555-556 [89 S.W.2d 751].

"*Turner v. Carter* was not overruled in *Logan v. Reaves,* but was distinguished on the ground that the son 'had not been completely emancipated'. *Logan v. Reaves,* 209 Tenn. 634-635 [354 S.W.2d 789]. In commenting on the Supreme Court's opinion in *Logan v. Reaves,* both the Vanderbilt Law Review and the Tennessee Law Re-

view justify the Supreme Court's opinion in that case solely on the ground that it was based on the complete emancipation of the minor defendant involved. 16 Vanderbilt Law Review, page 902, says:

'The opinion seems to emphasize the termination of the relationship of complete emancipation of the child somewhat more than the severance of the relationship by death. This suggests that even if the mother had not filed, she could have maintained the action upon the emancipation of the child.'

"29 Tennessee Law Review, page 595, says:

'Since the court did not rely primarily upon the termination of the relationship by death, no other conclusion can be drawn but that the holding is based mainly upon the subsequent emancipation.'

"In any event, the facts of the case of *Logan v. Reaves* were the converse of those of the instant case, and even if the rule of family immunity should be completely abolished in the case of suits of parent against child, or against the estate of a child, there are many reasons why such immunity should not be abolished in the case of suits by an unemancipated child against the estates of a deceased parent. Among these are the following: 1st. To allow such action would be to discriminate in favor of an injured child whose parent died, as distinguished from another child equally injured whose parent survived the accident. 2nd. The statute of limitations does not run against the cause of action of a minor, if one exists, and a child might bring such action later when the parent dies or the child reaches its majority. Thus, over a long period of time the family harmony might be disrupted by apprehension on the part of the parent that such suit might be brought later. 3rd. In the

event of the death of the parent or emancipation of the injured child, real or fancied claims for injuries could be presented against the estate of the parent or against the living parent, and the family resources might thus be severely curtailed to the detriment of all other members of the family. Any or all of these situations might result in great family disharmony, where one child might be in a position to gather to himself resources which otherwise would be available to all. Also, such situation might be complicated by the question of whether or not the deceased parent's estate, or even the living parent if the relationship had been severed by subsequent emancipation of the minor child, would be entitled to credit for funds spent on treatment and rehabilitation of an injured child. Another reason why, in our opinion, such rule should not be established is that it would tend to develop on the part of normal parents a reluctance to do those things which necessarily result in some risk which the normal parent does in the interest of the health, training and proper preparation of a child to take his position in the world.

"For all of these reasons, we think the learned trial judge was in error when he failed to sustain the plea in abatement filed by Joan C. Gruttemeyer as administratrix of the estate of Maurice Edward Campbell, deceased, or in any event, when he refused to grant the motion for peremptory instruction made by the administratrix at the close of the proof in these causes. It is therefore our opinion that her Assignment of Error 1 must be sustained."

In addition to what was said in the Court of Appeals opinion, we adopt as sound a statement in *Lasecki v. Kabara,* 235 Wis. 645, 294 N.W. 33, 130 A.L.R. 883 (1940).

This was an automobile accident in which the mother and father were instantly killed and six children were injured. Demurrers to the causes of action were sustained and the appellate Court affirmed. The Court said:

"The (defendant) Insurance Company contends that the demurrers to the causes of action asserted against it by the six injured children, based upon the alleged causal negligence of their father, should have been sustained on the authority of *Wick v. Wick,* 192 Wis. 260, 212 N.W. 787, 789, 52 A.L.R. 1113, and *Segall v. Ohio Casualty Co.,* 224 Wis. 379, 272 N.W. 665, 110 A.L.R. 82. It was held in those cases that an unemancipated minor may not recover from his parent for the latter's negligence. The rule stated in *Wick v. Wick,* supra, has been assailed at times by members of the bar who represented unemancipated minors, seeking to recover for their parent's alleged negligence in cases where the parent was insured.

"The universal rule in this country is in accord with *Wick v. Wick,* supra; *Small v. Morrison,* 185 N.C. 577, 118 S.E. 12, 31 A.L.R. 1135; Annotations in 31 A.L.R. 1157, 71 A.L.R. 1071 and 122 A.L.R. 1352.

"The plaintiffs concede that the rule of *Wick v. Wick,* supra, is the universal rule but contend that it is not applicable to the facts alleged in this action. The question therefore arises: Is the rule of the Wick case applicable to the facts alleged here? There is a dearth of authority on the question whether an unemancipated minor, who in the lifetime of his parent had no cause of action against his parent, may in case of the parent's death file a claim against his estate based on the negligence of the parent, or bring an action against the administrator of his parent's estate grounded upon the parent's negligence. It is

earnestly contended by the plaintiffs that since it appears from the allegations of the complaint that both parents are deceased the reasons advanced for the holding in the Wick case do not exist, and therefore the rule does not apply. The fact that there is no case which has passed upon the precise question would seem strongly to indicate that such recoveries have probably not been attempted.

"It is, to say the least, shocking to our concept of justice that an unemancipated child, who has no cause of action against his living parent, may, if the parent die, and contingent upon such event, have a cause of action against his parent's estate or his administrator. While no question of parental authority can actually be involved, no question concerning the family as a complete social unit can exist, no question of disobedience to the parent can be present, if both parents are dead, and while perhaps no great discord among the surviving children will result in case there is insurance, we are of the opinion that the rule of the Wick case should be applied to such a situation and that the rule of that case should not be limited to a situation where the parent is living. To deny an unemancipated child the right to sue his living parent for the latter's negligence and to grant him the right to maintain such an action against the parent's estate or his administrator, in case the parent dies, should not, in our opinion, be permitted, in the absence of a statute authorizing such an action. Practically all of the courts of this country hold that the fact that the parent is insured, does not give rise to a cause of action based on the parent's negligence where no cause of action exists against the parent if not insured. *Luster v. Luster*, 1938, 299 Mass. 480, 13 N.E.2d 438, and cases cited therein; *Lund v. Olson*, 183 Minn. 515, 237 N.W. 188;

*Norfolk Southern R. Co. v. Grelakis,* [Gretakis] 162 Va. 597, 174 S.E. 841; *Bulloch v. Bulloch,* 45 Ga.App. 1, 163 S.E. 708; *Rambo v. Rambo,* 195 Ark. 832, 114 S.W.2d 468; *Owens v. Auto Mut. Indemnity Co.,* 235 Ala. 9, 177 So. 133.

"Recovery for injuries sustained as a result of the negligence of an operator of an automobile may, under certain circumstances, be had in an action brought against the insurance company alone, but a cause of action against the insured must exist. See *Elliott v. Indemnity Ins. Co.,* 201 Wis. 445, 230 N.W. 87, and cases hereinafter cited.

"We therefore conclude that the rule of the Wick case should be applied to situations such as is alleged in the complaint. To hold that an unemancipated minor may not recover from its parent, if living, for the latter's negligence, but may do so if the parent die, would open wide the door and permit unemancipated minors to file claims of all kinds, sounding in tort, against the estates of their parents or to bring actions based thereon against the administrators of their parent's estates. We have such grave doubts as to the wisdom of such a policy that we consider that we, as a court, should not declare it. We consider that such a far-reaching step, so at variance with the common law, should not be taken by this court. 'Questions of public policy are primarily for the Legislature.'" *Wait v. Pierce,* 191 Wis. 202, 209 N.W. 475, 478, 210 N.W. 822, 48 A.L.R. 276. If the legislature deems it wise to give to unemancipated minors causes of action against their living parents or their estates, grounded upon the torts or negligence of their parents, it may do so.

"In actions against administrators of deceased parents, where there is no insurance, serious controversies between, and ill feeling among, other surviving children, would probably result. Such actions, if permitted might take from a surviving widow and other infant children, the very essentials of their support. As was said in *Roller v. Roller*, 37 Wash. 242, 79 P. 788, 789, 68 L.R.A. 893, 107 Am.St.Rep. 805, 3 Am.Cas. 1: '* * * the public has an interest in the financial welfare of other minor members of the family, and it would not be the policy of the law to allow the estate, which is to be looked to for the support of all the minor children, to be appropriated by any particular one.' "

It is strongly and earnestly argued that this Court should permit this kind of action, this being the more modern and enlightened view.

Appreciating that there are some considerations in favor of allowing such an action, we are of opinion those against allowing it are weightier. That where by reason of a long established rule of the common law, generally recognized and acceded to, there is no cause of action, this Court should not, simply in quest of that which a very few may regard as modern and enlightened, create one.

We particularly like the discussion of this proposition in *Downs v. Poulin*, Me., 216 A.2d 29 (1966). In an automobile collision occurring while a mother was taking her nine-year old daughter to school, the mother was killed and the daughter severely injured. The Maine Court stated the underlying question was whether an unemancipated minor child could maintain an action against a parent for bodily injuries caused by negligence of the parent, and found the basic, well nigh universal rule to

be that such an action cannot be maintained. With respect to the "modern and more enlightened" argument the Court said:

"The great weight of authority, unquestionably sustains the proposition that an unemancipated minor child cannot sue his parent for the negligent act of such parent causing the child to suffer personal injuries.

\* \* \* \* \* \*

"The jurisdictions sanctioning actions in cases somewhat similar to the instant case are a decided minority. *Dean v. Smith,* 106 N.H. 314, 211 A.2d 410; *Brennecke v. Kilpatrick,* 336 S.W.2d 68 (Mo.); *Palcsey v. Tepper,* 71 N.J.Super. 294, 176 A.2d 818; *Goller v. White,* 20 Wis.2d 402, 122 N.W.2d 193; (See obitur dictum in *Parks v. Parks,* 390 Pa. 287, 135 A.2d 65). It is the law in the jurisdictions where rendered, nevertheless, we believe the principle of the majority decisions is sound.

"In many of the cases cited by the plaintiff the facts are distinguishable from the facts in the instant case, such as willful, wanton malicious or intentional misconduct, master and servant relationship, injuries sustained in course of parent's employment, all being acts foreign to the duty of support, or health, welfare and education of the child. *Dunlap v. Dunlap,* 84 N.H. 352, 150 A. 905, 71 A.L.R. 1055; *Trevarton v. Trevarton,* 151 Colo. 418, 378 P.2d 640; *Borst v. Borst,* 41 Wash.2d 642, 251 P.2d 149; *Signs v. Signs,* 156 Ohio St. 566, 103 N.E.2d 754; *Nudd v. Matsoukas,* 7 Ill.2d 608, 131 N.E.2d 525; *Lusk v. Lusk,* 113 W.Va. 17, 166 S.E. 538.

\* \* \* \* \* \*

"The remaining question is plaintiff's contention that the modern and more enlightened view is to permit ac-

tions by minor children against the estate of a deceased parent for injuries sustained by the negligence of the deceased parent, and for authorities cites: *Brenneck v. Kilpatrick,* supra; *Palcsey v. Tepper,* supra; *Parks v. Parks,* supra; *Johnson v. Peoples First National Bank, etc.,* 394 Pa. 116, 145 A.2d 716; *Davis v. Smith,* D.C., 126 F.Supp. 497 (affirmed 3rd Cir., 253 F.2d 286, applying Pennsylvania law); *Vidmar v. Sigmund,* 192 Pa.Super. 355, 162 A.2d 15; *Dean v. Smith,* supra: Such authorities are in the minority.

"The plaintiff urges our consideration of the seriousness of the injuries sustained by the plaintiff. However, the seriousness of the injuries does not call for a relaxation of the rule. We know of no court which has ever recognized an exception to the rule based upon such a fact. As far as the basic cause of action is concerned, plaintiff must stand or fall upon the facts as they existed at the time of her injury. "She succeeds after death * * * to just such rights as existed before that time * * * but there must be some right in existence to survive. Here there was none." *Abbott v. Abbott,* supra [67 Me. 304]. She had no cause of action during the life of her mother and the death of her mother does not create a cause of action. To create, as suggested by the plaintiff, an exception to the rule by sanctioning action if the parent dies would open wide the door to permit unemancipated minors to file claims of all kinds sounding in tort against the estates of their parents. Further, we would be discriminating against children whose parents are living in favor of those whose parents are deceased.

"The doctrine of parental immunity from actions based on ordinary negligence has long been the accepted rule in this State, and under the weight of authority a sound

public policy forbids the maintenance of such an action. It must be conceded that it is not for the court, by sudden strokes of policy, to make innovations upon the established law. If the rule in such cases is, as the plaintiff contends, no longer suited to the times and should be dispensed with, the proper way to accomplish that end is prospectively by legislation and not retroactively by judicial decree; then if the legislature deems it wise to give unemancipated minors causes of action against their parents or estates, grounded upon the torts or negligence of their parents, it may do so, imposing such exceptions or conditions as it may deem appropriate.''

Another case in point is *Gunn v. Rollings,* 157 S.E.2d 590, 591 (S.C.1967), wherein an unemancipated minor brought suit against the administrator of the estate of the deceased stepfather for injuries arising out of an automobile accident. In that case the Court said:

''An unemancipated minor who does not have the right to sue his living parent for the parent's negligence has no right to maintain such an action against the parent's estate or administrator thereof if the parent dies, in the absence of a statute authorizing such action. *Cannon v. Cannon,* 287 N.Y. 425, 40 N.E.2d 236; *Lasecki v. Kabara,* 235 Wis. 645, 294 N.W. 33, 130 A.L.R. 883. See also in this connection the case of *Maxey v. Sauls,* 242 S.C. 247, 130 S.E.2d. 570. In *Reingold v. Reingold,* 150 [115] N.J.L. 532. 181 A. 153, it was held that the right of action, if any, is determined as of the day of the accident, it either did or did not exist as of that day.''

In concluding, we quote with approval from the latest case to come to our attention, *Barlow v. Iblings,* Iowa, 156 N.W .2d 105 (Feb. 6, 1968), the following:

"After extensive review of case law and authorities in this area, it is our conclusion that generally, in absence of statute, an unemancipated minor child may not maintain suit against its parent for injuries caused to the child by the ordinary negligence of the parent."

Accordingly, the judgment of the Court of Appeals is in all things affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.