Rick TURNER and Rob Turner, Minor Children, by Bonnie Turner Flynn, Their Mother and Next Friend, and Bonnie Turner Flynn, Appellants,

v.

Robert Gordon TURNER, Appellee.

No. 64320.

Supreme Court of Iowa.

April 15, 1981.

J. C. Salvo and Richard Schenck of Hines, Sawin, Lewis, Salvo & Deren, Harlan, for appellants.

Robert J. Laubenthal of Smith, Peterson, Beckman & Willson, Council Bluffs, for appellee.

McCORMICK, Justice.

In *Barlow v. Iblings*, 261 Iowa 713, 156 N.W.2d 105 (1968), this court made an exception to the common law right of unemancipated minor children to sue their parents. The court held that such minors could not sue their parents for negligence torts. In the present case, plaintiffs Rick and Rob Turner sued their father, defendant Robert Turner, for damages which they alleged they sustained in an automobile accident caused by their father's negligence. We granted interlocutory review of a trial court holding that the action is precluded by *Barlow*. Upon reexamination of the parental immunity doctrine, we now abrogate the absolute ban on negligence suits imposed in *Barlow*. Because we hold that the present action may be maintained, we reverse the trial court and remand the case for further proceedings.

Plaintiff Bonnie Turner Flynn is the mother of the minor plaintiffs. She is divorced from defendant and has custody of the children. The petition alleges that the children were passengers in a motor vehicle driven by defendant on September 11, 1977. Plaintiffs aver that defendant drove the vehicle negligently, recklessly and while intoxicated causing it to overturn. The children seek damages for their resulting injuries, and the mother seeks damages in her own right under Iowa R.Civ.P. 8. The mother's claim is not involved in this appeal. In answering the children's claim, defendant asserted the doctrine of parental immunity as an affirmative defense. When plaintiffs petitioned for an adjudication of law points on the merits of that defense, the trial court held the immunity barred the children's action. The only question in the children's appeal is whether that ruling is correct. In turn, the correctness of the

ruling depends on the present viability of the *Barlow* rule.

■ When a rule is of judicial origin, it is subject to judicial change. *Kersten Co., Inc. v. Department of Social Services*, 207 N.W.2d 117, 118 (Iowa 1973). We have exercised our prerogative to abrogate other court-created immunities. *See Shook v. Crabb*, 281 N.W.2d 616, 620 (Iowa 1979) (abolishing interspousal immunity); *Kersten*, 207 N.W.2d at 122 (abolishing governmental immunity in contract cases); *Haynes v. Presbyterian Hospital Association*, 241 Iowa 1269, 1274, 45 N.W.2d 151, 154 (1950) (abolishing immunity of charitable institutions). The common thread running through these decisions is our responsibility to reconsider court-made rules when their continued validity is questionable. Our recent decision in *Shook*, abolishing interspousal immunity, has raised a serious question concerning the absolute immunity of parents to negligence suits by their unemancipated minor children.

■ The *Barlow* court recited seven reasons which had been articulated by courts in other jurisdictions in support of parent-child immunity:

> (1) danger of fraud, (2) possibility of succession, (3) family exchequer, (4) analogy to denial of cause of action between husband and wife, (5) domestic tranquility, (6) domestic government, and (7) parental discipline and control.

261 Iowa at 716, 156 N.W.2d at 107. After reviewing these reasons, the court concluded: "Domestic tranquility, proper parental discipline and control, family unity, and social responsibility *are* ample grounds to sustain the policy and the doctrine." *Id.* at 718, 156 N.W.2d at 107–08 (emphasis in original).

Courts which have rejected the doctrine in whole or in part have found that the reasons advanced for retaining it are outweighed by countervailing reasons for giving children the same right of legal redress for injuries as others enjoy. *See, e. g., Lee v. Comer*, 224 S.E.2d 721, 722 (W.Va.1976). These courts recognize that to the extent the immunity is abrogated it does not create a new liability. Instead it merely removes a judicially imposed procedural barrier to recovery. *See, e. g., Gelbman v. Gelbman*, 23 N.Y.2d 434, 439, 245 N.E.2d 192, 194, 297 N.Y.S.2d 529, 532 (1969).

When we rejected the interspousal immunity doctrine, we rejected the arguments concerning the danger of fraud and the threat to domestic tranquility which are asserted in support of parent-child immunity. *Shook*, 281 N.W.2d at 619–20. We reject those arguments on the same basis in the present context. Contentions concerning the possibility of parental succession to the minor's recovery and the assumption that the "family exchequer" will be so depleted by the minor's recovery that other children will suffer are also without sufficient merit to support retention of the doctrine. These considerations have not been adequate to defeat children's rights to sue parents in contract and property cases. They have no greater force as justifications for denial of tort recovery. *See, e. g., Goller v. White*, 20 Wis.2d 402, 410, 122 N.W.2d 193, 197 (1963).

Furthermore, proponents of the doctrine can no longer rely on the analogy to interspousal immunity. Because interspousal immunity has been abolished, the analogy to interspousal rights now supports abrogation of parent-child immunity.

Forceful arguments have been advanced for retaining the doctrine based on the "domestic government" and "parental discipline and control" concepts. They have been countered by arguments that even a parent should not be able to injure children negligently with impunity and that the court system provides a reliable mechanism for screening out unmeritorious claims. Concern for supervisory prerogatives of parents and the possibility of bizarre claims has not been sufficient in most jurisdictions to justify retaining absolute immunity. Instead courts with such concern have delineated parental supervision and discretion exceptions to its abolition or have imposed other limitations on its abrogation. *Compare Goller*, 20 Wis.2d at 413, 122 N.W.2d at

198 (exceptions for negligent supervision and ordinary parental discretion), *with Merrick v. Sutterlin*, 93 Wash.2d 411, 610 P.2d 891, 893 (1980) (any exceptions will be determined on a case-by-case basis). One court which once recognized the *Goller* exceptions has recently abandoned them. *See Anderson v. Stream*, 295 N.W.2d 595 (Minn. 1980). The American Law Institute supports general abrogation of the doctrine with some limitation:

(1) A parent or child is not immune from tort liability to the other solely by reason of that relationship.

(2) Repudiation of general tort immunity does not establish liability for an act or omission that, because of the parent-child relationship, is otherwise privileged or is not tortious.

Restatement (Second) of Torts § 895 G (1979).

When *Barlow* was decided, the court found only one jurisdiction, New Hampshire, which had completely abrogated the family immunity doctrine. Two jurisdictions, Minnesota and Wisconsin, had abolished it in part, retaining the *Goller* exceptions. *See* 261 Iowa at 721, 156 N.W.2d at 112. Now, however, we find twenty-seven jurisdictions which, on various grounds, reject the doctrine at least in circumstances like those in the present case.[1] We are persuaded by the reasoning in the cases and experience in these jurisdictions that the absolute parental immunity doctrine should be abrogated. We endorse the statement and· vindicate the prediction of the dissenting justices in *Barlow* :

We should strive to make justice even-handed. This goal would be legitimate even *without constitutional sanction.* When we deny a litigant access to our courts because of his status, or his relationship to his adversary, or because of the adversary's special status, to some degree we violate the spirit, if not the letter, of that ideal.

Whenever we set a class of people apart, tell them they are unlike other people and deny to them the process of the law we violate a strongly felt need for equal treatment. We immediately search for exceptions, create legal fictions and try in one way or another to do justice. We try to achieve a just result which would otherwise be summarily denied. As often as not, in the end, we abolish the special rule. Such will probably be the fate of the strong pronouncement made by the majority today.

261 Iowa at 729, 156 N.W.2d at 114. (Becker, J., dissenting).

In abrogating absolute parental immunity we do not denigrate the values which that doctrine purports to foster. Rather, we believe the doctrine exacts too high a price. In addition, it is neither an effective or suitable means for protecting those values. ·At the same time we do not suggest abrogation of the doctrine is a panacea. We simply conclude that on balance justice is more likely to be achieved without the doctrine than with it.

We do not decide today whether the doctrine should be abrogated absolutely. We reserve the question whether there are ar-

---

1. *See Hebel v. Hebel*, 435 P.2d 8 (Alaska 1967); *Streenz v. Streenz*, 106 Ariz. 86, 471 P.2d 282 (1970); *Gibson v. Gibson*, 3 Cal.3d 914, 479 P.2d 648, 92 Cal.Rptr. 288 (1971); *Williams v. Williams*, 369 A.2d 669 (Del.1976); *Peterson v. City & County*, 51 Hawaii 484, 462 P.2d 1007 (1969); *Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135 (1980); *Ridgon v. Rigdon*, 465 S.W.2d 921 (Ky.1971); *Bondurant v. Bondurant*, 386 So.2d 705 (La.Ct.App.1980); *Black v. Solmitz*, 409 A.2d 634 (Me.1979); *Sorensen v. Sorensen*, 369 Mass. 350, 339 N.E.2d 907 (1975); *Plumley v. Klein*, 388 Mich. 1, 199 N.W.2d 169 (1972); *Anderson v. Stream*, 295 N.W.2d 595 (Minn.1980); *Fugate v. Fugate*, 582 S.W.2d 663 (Mo.1979); *Briere v. Briere*, 107 N.H. 432, 224 A.2d 588 (1966); *France v. A.P.A. Transport Corp.*, 56 N.J. 500, 267 A.2d 490 (1970); *Gelbman v. Gelbman*, 23 N.Y.2d 434, 245 N.E.2d 192, 297 N.Y.S.2d 529 (1969); *Rupert v. Stienne*, 90 Nev. 397, 528 P.2d 1013 (1974); *Nuelle v. Wells*, 154 N.W.2d 364 (N.D. 1967); *Falco v. Pados*, 444 Pa. 372, 282 A.2d 351 (1971); *Elam v. Elam*, 268 S.E.2d 109 (S.C. 1980); *Felderhoff v. Felderhoff*, 473 S.W.2d 928 (Tex.1971); *Smith v. Kauffman*, 212 Va. 181, 183 S.E.2d 190 (1971); *Merrick v. Sutterlin*, 93 Wash.2d 411, 610 P.2d 891 (1980); *Lee v. Comer*, 224 S.E.2d 721 (W.Va.1976); *Goller v. White*, 20 Wis.2d 402, 122 N.W.2d 193 (1963). Conn.Gen.Stat. § 52–572c (Supp.1979); N.C. Gen.Stat. § 1–539.21 (Supp.1977).

eas of parental authority and discretion where immunity should exist. That question can best be answered in a case in which it arises. *See Merrick*, 93 Wash.2d at 415, 610 P.2d at 893. For now we hold that, at least outside the area of parental authority and discretion, unemancipated minor children are not barred by the immunity doctrine from suing their parents for negligence torts. Because the immunity defense is thus unavailable in the present case, we reverse the trial court's adjudication of law points and remand the case for further proceedings.

REVERSED AND REMANDED.

All Justices concur except LeGRAND, ALLBEE and McGIVERIN, JJ., who dissent and LARSON, J., who takes no part.

LeGRAND, Justice (dissenting).

I. I dissent from the court's opinion for all the reasons stated in my dissent in *Shook v. Crabb*, 281 N.W.2d 616, 620 (Iowa 1979).

II. However, there are additional reasons why an unemancipated minor should not be permitted to sue a parent for ordinary negligence.

Both *Shook* and the present case involve family ties; but there the similarity ends. The parent-child relationship is more close, personal, lasting, and emotional than any other. It involves elements of love, affection, trust, confidence, dependence, discipline, supervision, and control which must be exercised daily by parents from birth to maturity in nurturing, sustaining, and educating the child. The duties are demanding and burdensome; they are also rewarding. In overruling *Barlow v. Iblings*, 261 Iowa 713, 156 N.W.2d 105 (1968) today, the court virtually destroys this cherished cornerstone of our society.

The court recognizes abrogation of the immunity rule is no "panacea" but dismisses this by saying the price for family harmony "is too high." On the contrary, I believe the price for discarding the doctrine is one which society cannot, and should not, bear. *See Streenz v. Streenz*, 106 Ariz. 86, 471 P.2d 282 (1970) (McFarland, J., dissenting).

Just as distressing as the result are the reasons given to justify it. Courts rushing to rescind this rule—which virtually all courts had recognized for almost 100 years—usually have done so on several untenable grounds. They say it does not affect family unity or harmony; they discount the danger of fraud and collusion.

Some have abolished it only to the extent of insurance coverage, as though what is inherently wrong is thus made right. *Williams v. Williams*, 369 A.2d 669, 672 (Del. 1976); *Sorensen v. Sorensen*, 369 Mass. 350, 339 N.E.2d 907, 908–09 (1975). Others retain the rule only in situations involving parental "supervision and control," raising the interesting question as to where the supervisory duty of parents starts and stops.

The majority today reserves the "supervision and control" case for the future, limiting its ruling to the automobile case at hand. Such foot-in-the-door decisions have a history of development and expansion just as quickly as cases involving other "exceptions" come along. *See Nocktonick v. Nocktonick*, 227 Kan. 758, 611 P.2d 135, 143 (Schroeder, C. J., dissenting). I predict that fate for this court, too. We cannot even stop there, of course, for we must then allow, too, suits by parents against minor children. *See Schenk v. Schenk*, 100 Ill. App.2d 199, 241 N.E.2d 12 (1968).

The majority points to a box score of states in favor of rescinding the rule. We have not always been so responsive to such a head count. *See Handeland v. Brown*, 216 N.W.2d 574, 577 (Iowa 1974). ("We have no obligation to adopt a rule just because it has been generally adopted elsewhere".) We should not be influenced by the unfortunate results from other states in this instance. We should, instead, stay with the states which have retained parental immunity. They include: *Owens v. Auto Mut. Indemnity Co.*, 235 Ala. 9, 177 So. 133 (1937); *Thomas v. Inmon*, 594 S.W.2d 853 (Ark.1980); *Hansen v. Hansen*, 608 P.2d 365 (Colo.App.1980); *Horton v. Unigard Ins. Co.*, 355 So.2d 154 (Fla.App.1978); *Wisen-*

baker v. Zeigler, 140 Ga.App. 90, 230 S.E.2d 97 (1976); Pedigo v. Rowley, 101 Idaho 201, 610 P.2d 560 (1980); Illinois Nat'l Bank & Trust Co. v. Turner, 83 Ill.App.3d 234, 38 Ill.Dec. 652, 403 N.E.2d 1256 (1980); Gerrity v. Beatty, 71 Ill.2d 47, 15 Ill.Dec. 639, 373 N.E.2d 1323 (1978); Hunter v. State, 360 N.E.2d 588 (Ind.App.1977); Shell Oil Co. v. Ryckman, 43 Md.App. 1, 403 A.2d 379 (1979); McNeal v. Estate of McNeal, 254 So.2d 521 (Miss.1971); Pullen v. Novak, 169 Neb. 211, 99 N.W.2d 16 (1959); Nahas v. Noble, 77 N.M. 139, 420 P.2d 127 (1966); Teramano v. Teramano, 6 Ohio St.2d 117, 216 N.E.2d 375 (1966); Chaffin v. Chaffin, 239 Or. 374, 397 P.2d 771 (1964); Castellucci v. Castellucci, 96 R.I. 34, 188 A.2d 467 (1963); Campbell v. Gruttemeyer, 222 Tenn. 133, 432 S.W.2d 894 (1968); Oldman v. Bartshe, 480 P.2d 99 (Wyo.1971).

In Iblings, 261 Iowa at 718, 156 N.W.2d at 107–08, we justified upholding the immunity concept by considerations of "domestic tranquility, parental discipline and control, family unity, and social responsibility." Those considerations remain stronger, not weaker, in today's troubled society. At a time when family solidarity is crumbling and when lack of family control is a matter of concern and alarm, courts should be alert to preserve, not further enfeeble, what is left of this basic unit of societal strength.

I cannot resist referring briefly to the inconsistency between this opinion and Fundermann v. Mickelson, Iowa, 304 N.W.2d 790, both filed today. It is the same conflict discussed in Chief Justice Reynoldson's dissent in the Fundermann case.

In attempting to refute the claim that litigation between parent and child opens the door to fraud and collusion, the majority relies on Shook v. Crabb, 281 N.W.2d 616, 620 (Iowa 1979), which assures us we can confidently rely on juries to search out and separate fraudulent claims from legitimate ones. Similar statements concerning the ability of juries to always arrive at the truth are found in Barnhill v. Davis, 300 N.W.2d 104, 106 (Iowa 1981), and Bearbower v. Merry, 266 N.W.2d 128, 134 (Iowa 1978). However, the court summarily rejects this same concept in Fundermann, filed today, where we rail about the "impossibility of juries sorting out contested facts" and say it is "illogical to pretend juries can dispassionately resolve factual disputes" in alienation of affection suits. What makes this metamorphosis even more strange and inexplicable is that we attribute verity to the jury in non-adversarial contests and deny it in truly adversarial trials. See dissent in Shook, 281 N.W.2d at 621–22.

Barlow v. Iblings should still represent the public policy of this state. We have recently fallen back on public policy to bar a suit by a patient against her doctor. Cole v. Taylor, 301 N.W.2d 766 (Iowa 1981) and to dismiss an action for alienation of affections. Fundermann v. Mickelson, filed today. It is strange that in the area of parent-child relationship—more important to the commonweal than either of these—we abandon a long-established public policy which has traditionally protected the family from the specter of intra family litigation.

ALLBEE and McGIVERIN, JJ., join division II of this dissent.